## In re COGSWELL.
### Patent Appeal No. 2662.

Court of Customs and Patent Appeals.
March 31, 1931.

Robert Cushman, of Boston, Mass. (A. L. Bryant, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The Board of Appeals of the Patent Office sustained the action of the Examiner in denying the petition of appellant for the reissue of a patent, and he has appealed to this court.

The application relates to improvements claimed to have been made in machinery for grading soles, taps, heel lifts, counters, and other leather blanks used in the manufacture of shoes. It seems that such blanks are graded or classified according to the thickness of the thinnest part or spot.

Lacene Manufacturing Company is the assignee of appellant, who has died since his assignment of the claims in issue, and the application is being prosecuted in its behalf. This company is also the assignee of several patents heretofore issued to one E. A. Nichols, including one numbered 1,130,321, issued March 2, 1915, to which it is stated in the reissue application there were applied certain new features embodied in patent 1,366,889, issued to Cogswell January 25, 1921.

It is this latter patent which it is sought to surrender and have reissued under petition filed October 24, 1921.

The several patents heretofore issued to Nichols and to Cogswell are for machines for grading the leather blanks referred to above, and some, at least, of them, as stated in the brief for appellant, contain the following elements:

"(1) Detecting mechanism at the ingoing end of the machine for measuring successive blanks as they are fed through the machine and determining the thickness of their thinnest spots; (2) grading mechanism at or near the outgoing end of the machine for performing some grading operation upon the blanks in accordance with the thinness measurements determined by the detecting mechanism; and (3) setting or transmitting mechanism by which the thinness measurements of the detecting mechanism are preserved and transmitted to the grading mechanism."

These elements are all present in the patent to Cogswell, reissue of which is here sought, and the essential feature for which the reissue is so sought is a claimed improvement which will admit a succeeding blank into the machine before the preceding blank has left the machine. Twenty-three claims are presented of which No. 1 may be taken as being fairly typical:

"1. A machine of the kind described comprising grade detecting mechanism for detecting the grade of successive blanks of stock according to thickness; grading mechanism controlled in response to said grade detecting mechanism for utilizing the grade detection, means governing the admission of stock to said grade detecting mechanism; and *means to operate said admission governing means to admit a piece of stock to the detecting mechanism before a preceding piece of stock has left the grading mechanism.*" (Italics ours.)

The matter alleged to have been in the patent but not covered by the claims thereof, and now claimed by the reissue application, is embraced in the clause which we have italicized.

In its decision the Board of Appeals said:

"The claims on appeal are drawn to a machine having an essentially different mode of operation. They require a construction in which the succeeding piece of stock is admitted to the detecting mechanism before the preceding piece of stock has left the grading mechanism. They define an invention which not only is not disclosed in the patent but which is inconsistent with the patent disclosure. The rejection on the ground of new matter is deemed well founded."

The machine, improvements upon which are here involved, is a complicated one and difficult, if not impossible, of description, in a nontechnical manner.

The patent to Cogswell, reissue of which is sought so as to include the feature italicized in our quotation of claim 1, supra, which appellant insists was disclosed but not claimed in said patent, contains in its specifications certain statements relating to the operation of the device as there patented, which is quoted in the brief of the Solicitor for the Patent Office, as follows:

"As the marking devices and evening knives were at the rear of the machine, while the feeling and setting mechanism was at the front of the machine, it was most important that the gate actuating devices be accurately controlled so as to prevent a successive blank from entering the machine, until in the cycle of operations, the machine was ready to receive it and in condition to reset the marking and evening mechanism according to the grading of the new blank. My present invention accomplishes the result above briefly explained, and I provide means cooperating with the feeler mechanism to maintain the gate closed even after the blank has passed out of contact with the feelers, thus preventing the gate opening devices to be actuated to open the gate until the proper time and until the machine is ready to receive a successive blank. * * *

"It is important that this gate be maintained closed, after a piece of stock has been fed into the machine, until the cycle of the machine including the setting of the marking or stamping mechanism and in case of an evening machine of the cutting knives as well, be allowed to perform their respective functions before the succeeding sole is fed into the machine. * * *

"The gate controlling mechanism, as above described depends for opening and closing, as well as for the extent of throw or lift in the opening and closing action, upon the action of the shoe 44, and as it is desirable to adjust this shoe, longitudinally on the arm 34, for particular work, it frequently happens that, when short stock particularly is being fed through, the stock will be fed past the position of the shoe 44, permitting said shoe to drop and thereby opening the gate, before said stock has traversed the rest of the machine and received its stamping or grade marking, its cutting action, i e., before the cycle of the machine has been completed, which cycle has been set by the action of the detector mechanism and the pawls and rack wheel in this type of machine. Under such circumstances, therefore, the danger exists that a successive piece of stock being fed in as soon as the gate is opened, would strike the mechanism and detector while the preceding piece of stock was still being acted upon, and therefore the proper operation and function of the machine would be negatived or the parts damaged and broken. To obviate this difficulty, and to enable the machine to operate upon short stock, thus making it more automatic and with the capacity for larger range of work, I provide a device independent of the shoe 44 to control the gate opening operation." (Italics ours.)

The Solicitor for the Patent Office urges before us that the feature of the claims in the reissue application, relating to "means to admit a piece of stock to the detecting mechanism before a preceding piece of stock has left the grading mechanism" (italics ours), is entirely inconsistent with, in fact directly contrary to, the statements which we have italicized in the quotation from the specifications, supra.

That the inconsistency so pointed out by the Solicitor for the Patent Office exists admits of no doubt. This appellant concedes. Also it is true that no claim of the patent is broad enough to include the feature now sought in the reissue application.

Appellant insists, however, that, since the above-quoted statements of the patent appeared in the specifications and not in the claims thereof, and were, in fact, erroneous, he is entitled, under the reissue statute, to have the alleged error of the specifications corrected and make the claim now presented.

It is admitted, as indeed it must be, that

the Cogswell patent per se does not disclose the structure claimed in the application for reissue. However, that patent makes reference to certain patents for evening, grading, and marking machines granted to Elmer P. Nichols, "such for example as Reissue No. 12,288, dated November 22, 1904, and No. 841,809, dated January 22, 1907." Also it states:

"The object of the invention is to improve and perfect machines of this type, particularly with reference to the gate controlling and marker or stamp tripping mechanism, as shown in E. P. Nichols Patent, No. 1,104,378, dated July 31, 1914."

The Board, in its opinion, indicated, and the Solicitor for the Patent Office, in his brief and in oral argument, concedes, that the reference in the Cogswell patent to the Nichols patents may be treated as bringing into the former such disclosures as were contained in the latter "to the extent that the original [Cogswell] patent gave any intimation of intention to include anything disclosed by Nichols." This includes the skiving, evening, and marking devices as disclosed in these Nichols patents specifically referred to by their numbers in the Cogswell patent.

But Nichols patent, 1,130,321, was not mentioned in the Cogswell patent; it was brought into this proceeding for the first time in the reissue application. It is, therefore, insisted that it may not be treated as a part of the disclosures of the Cogswell patent for reissue purposes.

The brief of the Solicitor for the Patent Office says:

"Of course, an inaccurate description of operation of a structure clearly disclosed in the original patent might be corrected in a reissue. Appellant now attempts to argue (brief p. 31–34), as to an alleged error in the Board's decision as to a 'supposed *positive connection*' whereas the application now discloses a 'yielding connection' taken from the Nichols patent No. 1,130,321, which disclosure was not in the original application for patent sought to be reissued and which Nichols patent was not mentioned therein. Had the original patent disclosed the structure now disclosed in the reissue, or not disclosing it, had it referred to Nichols patent No. 1,130,321 there might be some point to appellant's argument as to the difference between yielding and positive connections. If such structure [Cogswell] had been disclosed directly in the application, or indirectly by reference to a patent by number, a mere inaccurate description of its operation might be cured. But here the original patent neither directly nor indirectly disclosed what is in Nichols patent No. 1,130,321, and the 'connection' therefrom which appellant has introduced into the present case to make it operate as he would now claim is, as stated by the Board of Appeals (R. p. 115), 'inconsistent with the disclosure in appellant's patent.'

"That the feature of Nichols patent 1,130,321 now sought to be incorporated into this reissue application is inconsistent with the disclosure of appellant's patent is in harmony with the fact that appellant's patent mentions by number at least three Nichols patents upon which appellant's patent is supposed to be an improvement, but does not mention Nichols 1,130,321 now attempted to be incorporated as part of the disclosure of the reissue application."

Without the Nichols patent, 1,130,321, it seems obvious that the Cogswell patent does not make a disclosure sufficient to support the reissue claim as to the feature particularly sought.

Assuming, without deciding, that, if said patent, 1,130,321, had been specifically referred to in the Cogswell patent, it would be a sufficient disclosure to support the reissue claims, the specifications and drawings being altered, as the reissue application proposes, the question is presented, Does the reissue statute admit of it now being introduced and considered for the purposes desired?

We are unable to see upon what theory this can be held permissible.

The pertinent portion of section 4916 of the Revised Statutes, 35 USCA § 64, reads:

"Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification * * * if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall * * * cause a patent for the same invention, and in accordance with the corrected specification, to be reissued * * * but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other."

The patent, 1,366,889, granted to Cogswell, in so far as it relates to the feature of feeding stock by the impulse or impulses of the detecting mechanisms, was confined to admitting a piece after, and only after, a preceding piece had passed from the skiving, evening, and marking parts of the machine.

We do not understand that this patent per se is claimed or conceded to be either "inoperative or invalid." In this proceeding, at least, it must be treated as complete and in exact accordance with the specifications, which are supported by the drawings, and the claims, all of which constitute its parts.

Had the Nichols patent, 1,130,321, been in the Cogswell application, and had it been given the construction now asked for it in this proceeding, obviously the patent into which said application would have ripened would of necessity have been different from that into which it did ripen. It could not have been for the *same invention.*

The statute has been so often construed, and its construction is so well understood, as that it is not deemed necessary to quote numerous authorities holding that a reissue must be limited to the same invention, and that new matter may not be introduced into a reissue specification. A decision of this court in Morgan v. Drake .et al, 36 F.(2d) 511, 17 C. C. P. A. 729, and cases therein cited, are in point.

Learned counsel for appellant has cited us to certain decisions of the Supreme Court of the United States, to wit: Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 19 L. Ed. 566, and Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064.

These decisions are cited in support of appellant's proposition "that an invention which was inherent in the structure of the original patent, although not explicitly described, may be covered by reissue (Rubber Co. v. Goodyear); and that a structural and functional condition of common knowledge, although not described in the original patent, may be covered by reissue (Eames v. Andrews)."

Accepting, without holding, these principles to be correct as abstract statements, nevertheless we cannot agree with counsel as to their applicability here.

There is nothing in the Cogswell patent to show that the element now contended for was "inherent" therein, except upon the assumption that (a) Nichols, 1,130,321, showed it, and that (b) Nichols, 1,130,321, was embraced in Cogswell by his general references. But, as has been stated, even if the assumption and the admission of .the Nichols patent were proper, then that which would have been inherent would have been something different from what was patented and would not constitute the same invention.

As for the second phase of the proposition, that of common knowledge, surely there is nothing in this record to show that the principle of feeding a piece of stock, in the manner described, before the preceding piece had passed from the skiving operation was "a structural and functional condition of common knowledge." The device for doing this is the very thing upon which appellant here seeks patent, and, so far as we are aware, was for the first time fully, specifically, and definitely disclosed to the art in his reissue application.

The decision of the Board of Appeals being, in our opinion, without error, is affirmed.

Affirmed.