JohNson, Judge,
delivered the opinion of the court:
This'is an appeal from the decision of the Board of Appeals of the United, States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable to appellant claims 6, 10, 11,15, 16j-and 20 of appellant’s application for a reissue patent relating to “Motor Cooling Systems.” Claims 1 to 5, and 24 to 27 were allowed.
The claims on appeal relate to a reissue application, filed October SO, 1952, of Patent No. 2,459,311,.issued January 18, 1949.
.The examiner rejected the claims for various reasons. The first reason was that all of' the claims were broadened claims in a reissue application which was filed more than two years after the patent was issued, and that these broadened claims could therefore not be óbtainéd by appellant because of the statutory bar set forth in 35 U. S. C. §-251. The second reason for rejecting all of the claims was that they were'not warranted by the original disclosure. The third reason was that: claims 10, 15, and 20 were unpatentable over the “Bataiczak patent taken with Dennedy.” The Board of Appeals affirmed the decision of the examiner on all of the foregoing grounds.
We believe that an orderly analysis of the present case requires us to first determine whether the board and examiner were correct in holding that the claims on appeal were not warranted by the original disclosure. In order to answer this • question we must analyze the disclosure-of the patent to see whether it supports the claims now on appeal.
Appellant’s patent relates to a refrigeration system having a provision' therein for cooling the motor. In the system, a motor is mechanically coupled to a compressor for driving the latter. Befrigerant is fed from an evaporator to the compressor where it is compressed. Bebausé of the compression the refrigerant' is heated. Lubricating *902 oil which, is in the compressor is mixed with the refrigerant as' an incidental result of the compressing step. The refrigerant-oil mixture is passed to a preliminary condenser where it is cooled, and it is them fed into the'motor where the oil and refrigerant are separated. The oil drops to a sump at the base of the motor. The refrigerant evaporates on contact with the hot motor parts, and thus cools the motor¡ by absorving heat from it. The oil which drops to a sump at the base of the motor is fed back to the compressor, as discussed hereafter. A conduit leads the refrigerant back to a main condenser for condensing it... After the refrigerant is condensed, it is passed to the evaporator where evaporation occurs thus producing desired refrigeration. The foregoing described cycle is then repeated.
Claim 6 is representative of those appealed, and reads as follows:
6. In a refrigeration, system comprising a compressor motor combination unit witliin a single casing arranged ,to receive, refrigerant and having a lubricant reservoir, said compressor unit having a straight vertical channel medium: from the compression chamber to said reservoir, evaporator means having its suction . side directly connected to the inlet port of said compressor, and a main condenser having a predetermined heat exchange area to cool and liquify the liquid vapor ■ received from the casing, said main condenser being interconnected with the.' upper part of said casing by conduit means, and said main condenser being connected with said evaporator by conduit means, the combination with said compressor motor combination unit of a finned preliminary refrigerant cooling coil arranged exteriorly of the casing separate and removed from said main' condenser and having its inlet connected directly to the outlet of the compressor, whereby the super-heated and compressed gas is carried away from the com-, pressor without said gas passing through the casing, the outlet of said prelimi-; nary cooling coil being connected to the casing, said preliminary cooling coil-having a predetermined heat exchange area to condense partially the compressed refrigerant vapor whereupon the partially compressed condensed refrigerant and the entrained oil coming into contact with the motor parts inside the casing, effect a cooling of said motor with a resultant revaporization of the refrigerant in that portion of the casing enclosing the motor and also effecting a forced lubri-. cation of said compressor through said reservoir and. channel medium and with.. the oil collecting in the lubricant reservoir in the lower part of the casing to. separate the oil from the refrigerant. [Italics added.]
It is to be noted at this point, as a matter of interest, that claims ■ 6, 11, and 16 are exact copies of claims 2, 3, and 4, respectively,, of - Hubacker et al. patent No. 2,597,243, issued May 20, 1952, and that claims 10,15, and 20 are based on said claims with limitations omitted.. The claims were copied from the Hubacker et al. patent for the purpose of having an interference.
As noted above, the Board of Appeals affirmed the holding of the examiner that the claims now on appeal were not warranted by appel- . lant’s disclosures. In this respect, the board stated:
. Turning to claims 6, 11 and 16 which are copies of claims 2, 3 and 4 of the Hubacker et ai. patent No. 2,597,243, we fail to find in appellant’s disclosure *903 tte “compressor motor combination unit witbin a single easing”, the “the straight vertical channel”, the cooling coil “separate and removed from said main eon-, denser”, or the “forced lubrication of said compressor.” The rejection of' these claims will be sustained.
Claims 10 and 15 require “a compressor motor unit within a casing”, and that: the preliminary refrigerant cooling coil has “its inlet connected directly to the* outlet of the compressor”, or that “said compressor unit having a channel medium extending into said lubricant reservoir.” We fail to find these features, properly supported by appellant’s disclosures. Also we fail to find the “forced lubrication of said compressor” as required by claim 15 sufficiently supported in appellant’s disclosure. The rejection of these claims will be sustained.
Claim 20 includes “said compressor unit having a channel medium extending into said lubricant reservoir”, “a finned preliminary cooling oil arranged ex-teriorly of the easing and having its inlet connected directly to the outlet of the compressor”, or “forced lubrication of the compressor parts through the. channel medium.” None of these features do we find properly supported by appellant’s disclosure. The rejection of this claim will be sustained.
It is to be noted at this point that in the original Dejaríais patent specification, as filed, it was stated: “The present invention relates to an improved system over that covered by the United States patent to James H. Dennedy No. 1,960,576, issued May 29, 1934, on a refrigeration' system”. During the course of prosecution of the Dejaríais patent, the examiner questioned how the oil circulation system operated. In response to this query an additional paragraph was inserted' into the then pending Dejaríais application. This added paragraph and the interpretation given thereto by the examiner relative to the present case is set forth in the following portion of the examiner’s rejection of the claims:
* * * The first five lines of each claim recite in various terms a specific arrangement for drainage of the oil collecting in the motor housing 26. In the prosecution of the original case it was held that the disclosure was incomplete in that there was no showing at all of the manner in which the oil collecting in the motor housing 26 was put back in circulation. The paragraph in line 16” to 19 [infra] of page 7 was inserted to overcome this criticism. Close analysis ■ of this’ inserted paragraph became necessary when the claims now standing under rejection were presented in this reissue since each of these claims calls for a specific means for removing oil from the motor housing and relies on this paragraph for its support. This paragraph states “as described in the prior patent to James H. Dennedy, to which reference is made on page 1, a suitable conduit (not shown) is provided for conducting oil from the oil sump at the base of the motor housing back to the compressor inlet”. However in the Den-nedy patent referred to the oil from the oil sump is conducted by conduit 69 to the high pressure refrigerant receiver [sic] 47 rather than to the compressor inlet. The only other hint as to the oil drainage arrangement is given in the paragraphs starting in lines 1 and 19 of page 2 and in line 6 of page 9. Such paragraphs do not support any specific connection of the oil return and are inconsistent with the showing of Dennedy upon which support of the added paragraph is based. * * * [Matter in brackets added.]
*904 It is well settled that a reissue application must be limited to the same invention set forth in the original patent, U. S. Chemicals Co. v. Carbide Corp., 315 U. S. 668 (1942), and new matter may not be introduced, In re Leander Cogswell, 18 C. C. P. A. (Patents) 1136, 48 F. 2d 402, 8 U. S. Pat. Q. 555; Powder Co. v. Powder Works, 98 U. S. 126, 138 (1878). Also see 35 U. S. C. § 251. It is also well settled •that the same invention means whatever invention was described in the original patent, and which appears to have been intended to be •secured thereby. See U. S. Chemicals Co. v. Carbide Corp., supra, at page 676, and cases' cited therein.
• We will now proceed to analyze claim 6 in the light of the original patent specification, the Dennedy patent, and appellant’s arguments to determine whether the reissue claims are warranted by the original •disclosure, or, in other words, whether they are for the same invention. Particular attention will be focused on the italicized portions of the •claim because these portions are in issue. It is to be noted that claim 6 calls for a “compressor motor unit within a single casing.” The drawings of the originally issued patent show a motor positioned above and in contact with a compressor. In the specification, it is' stated:
■Another object of the invention is the provision of an improved motor compressor construction and motor cooling appartus. in which the motor and, compressor have separate housings but the usual housing enclosing the assembly.is not required and, therefore, the cost of the motor compressor assembly may be .substantially reduced.
* ■ * * * * * ■ •■* ■
* * * The same numerals have been applied to the parts of this drawing, but the structure is shown in greater detail, and it will be noted that motor 10 and •compressor 11 do not require an additional assembly housing enclosing, the separate motor and compressor housing. .
The motor housing is here indicated by the numeral 26 * * *. The housing 26 of motor 10 is hermetically sealed * * * . [Italics added.]
The foregoing portions of the original Dejaríais specification when viewed in the light of the drawings indicate to us that the motor and ..compressor have separate housing rather than a single casing as recited in the claim. It is to be noted that the examiner made the following uncontroverted statement in his answer to appellant’s brief before the Board of Appeals:
* * * It is noted that in the prosecution of applicant’s application that matured into the patent sought to be reissued the claims that matured into patent claims 1, 3, and 4 were added after the citation of a reference Rataiezak .satisfying all the limitations of these claims except for the housing structure. In urging the allowance of such claims in the paper filed April 15,1948, applicant presented two pages of arguments to the effect that his casing arrangement inr. •volved invention over an arrangement having the motor in the same, housing with the compressor, as in Rataiezak, and no other point of novelty was pre.sented. * * *
*905 The Rataiczak patent shows a motor and compressor in a single-housing. It would therefore seem that appellant has in the past made an argument which is inconsistent with his present argument that his original specification disclosed a single casing. Appellant now makes the following argument before us relative to how the “single casing” is supported by the specification:
In -Dejaríais this [single easing] is easing 26 and the outside walls of compressor 11, all of which constitute a single casing in which are found the motor 10 and compressor 11.
- If 26 is to be called the “single casing” containing the motor, , the claim still fits perfectly. It does not matter what Dejaríais is claiming or what his counsel said in getting claims allowed. It is merely a question of the Dejaríais disclosure, drawing, and description, which clearly show a “single easing.”
We are of the opinion that the “Dejaríais disclosure, drawing, and description” do not clearly show a single casing, as urged by appellant. The Dejaríais disclosure, in our opinion, shows separate housings for the motor and compressor, which do not constitute a single casing. We therefore conclude that the “single casing” recited in claim 6 is not warranted by or disclosed in the disclosure of the Dejaríais patent.
The above noted contradictory'arguments made by appellant during the prosecution of the original Dejaríais application and the reissue application focus attention on a question which has not been discussed in the briefs, but which we feel it is necessary to discuss. This question is: What is the effect of a deliberate amendment of claims to secure their allowance when this subject matter is attempted to be withdrawn from the claims by a reissue application ? In this respect it appears from the record that the claims in the DeJarlais patent were modified to recite “a motor compressor assembly comprising a motor having a separate housing and a compressor having a separate housing.” This is substantiated by the following statement of the Board of Appeals, which in the absence of any showing to the contrary, must be accepted as accurate. In re Gardner, 26 C. C. P. A. (Patents) 701, 99 F. 2d 767, 39 USPQ 438; In re Pirani et al, 22 C. C. P. A. (Patents) 1002, 75 F. 2d 223, 24 U. S. Pat. Q. 411:
In considering the Examiner’s contentions, we note that the Rataiczak patent was cited in appellant’s parent case as well as in the Hubaeker et al ease and that appellant narrowed his claims to recite a motor having a separate housing and a compressor having a separate housing, or a compressor located outside of á motor housing whereupon the parent application was allowed. ⅜ ⅜ *
It is to be noted that the arguments in the original application were apparently accompanied by an amendment of the claims to secure their allowance.
*906 ,In our recent case of In re Byers, 43 C. C. P. A. (Patents) 803, 230 F. 2d 451, 109 USPQ 53, we discussed the portion of 35 U. S. C. § 251 relating to reissues which states:
Whenever any patent is, through, error without any deceptive intention; deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, * * * reissue the patent for the invention disclosed in the original patent, ⅜ * *. [Italics added.]
It is then stated in the Byers case, supra:
* * * xhe use of the word “error” in that sentence [35 U. S. C. § 251] instead of the words “inadvertence, accident or mistake,” which appeared in the corresponding section (35 U. S. C. 64, Sec. 4915 R. S.) of the patent statutes prior to the recodification of 1952, does not involve a substantive change, and the same type of error is necessary to justify a reissue after the enactment of the Patent Act of 1952 as before. Moist Cold Refrigerator Co. v. Lou Johnson Co., 217 F. 2d 39, 103 USPQ 410; Riley v. Broadway Hale Stores, 217 F. 2d 530, 103 USPQ 414. Accordingly, decisions as to what constituted inadvertence, accident or mistake under the prior law are pertinent' here. [Matter in brackets added.]
The Byers case, supra, then states, “It is well settled that the deliberate withdrawal or amendment of a claim in order to obtain a patent does not involve inadvertence, accident or mistake and is not an error of the kind which will justify a reissue of the patent including the matter withdrawn.” Numerous authorities are cited in In re Byers, supra.
Therefore, in addition to our opinion that the original De J arlais disclosure does not clearly show the single casing which is now attempted to be claimed, we are of the opinion that appellant’s deliberate amendment of the claims to secure their allowance will prevent him from now claiming the canceled subject matter because such a previous deliberate amendment precludes the existence of “error” or “accident, inadvertence or mistake” which is the basis for obtaining reissue claims.
Claim 6 also recites “a straight vertical channel medium from the compression chamber to said reservoir.” As noted above, the Board of Appeals held that this structure was not properly supported by appellant’s disclosure. Appellant argues that this recited structure “is the ‘suitable conduit’ of Dejaríais, column 4, lines 10-14 where it is stated: ‘a suitable conduit (not shown) is provided for conducting oil from the oil sump at the base of the motor housing back to the compressor inlet’.” However, the foregoing quoted portion of the De-jaríais patent refers to the oil return structure of the Dennedy patent. Therefore, it must be determined whether the “suitable conduit” of Dennedy is a “vertical channel medium from the compression chamber to the reservoir.” In Dennedy, oil in the motor passes to a conduit which leads from the motor to a reservoir. In the reservoir, it is *907 mixed with refrigerant and passés to an expansion coil, from which it returns to the compressor. We do not consider the foregoing Den-nedy structure, which was incorporated into the Dejaríais patent by reference, to be a “straight vertical channel medium from the compression chamber to said reservoir.” We therefore are of the opinion that this recitation in claim 6 is not disclosed by the original Dejaríais disclosure.
The Board of Appeals was of the opinion that the structure recited in the phrase “preliminary refrigerant cooling coil arranged exte-riorly of the casing separate and removed from said main condenser” was not supported by the disclosure. The drawing shows a preliminary cooling coil, as recited in the claim, which forms an independent circuit to the condenser between the compressor and the motor. This preliminary cooling coil, as shown in the patent drawing, utilizes a portion of the main condenser, the remainder of the condenser being-used for cooling refrigerant which is conducted from the motor to the evaporator. We are of the opinion that, when the.structure recited in the above-quoted portion of the claim is viewed" in the light of the disclosure, it is supported by the disclosure in the sense that the preliminary cooling coil functions completely independent of the main refrigerant cooling coil.
In claim 6, there is also a phrase which states “effecting a forced lubrication of said compressor through said reservoir and channel medium” which the board held to be unwarranted by the disclosure. There is no recitation in the original De Jarlais or Dennedy disclosures of forced lubrication. However, appellant argues- that this -feature is inherent in the Dejaríais disclosure, and states in his brief:
The motor housing is full of gas and oil under high pressure. The pressure bears on the oil in the sump. The conduit from the sump leads to the compressor inlet, which is a point of suction or low pressure. Therefore, oil flows from the sump into the compressor. It is evident that this function is inherent in the structure disclosed by-DeJarlais.
The foregoing quoted statement bears some examination. In the Dejaríais patent, as originally filed, there was no conduit shown leading from the sump in the motor housing to the compressor. Appellant then added the above-noted statement to the patent specification that a suitable conduit was shown in the Dennedy patent. However, the conduit in the Dennedy patent leads from the motor to a reservoir then to an expansion coil, and then to the compressor. It may well be that forced lubrication can occur. Yet the fact remains that forced lubrication was not discussed in the original Dejaríais disclosure, and it may be that it only occurs under certain but not all conditions. In short, we are not convinced that forced lubrication will inherently occur. It is well settled that where the certain *908 function, does not necessarily occur in the operation of the disclosed device, it has not been shown to be inherent. Keeling v. Heid, 28 C. C. P. A. (Patents) 1008, 118 F. 2d 571, 49 USPQ 102. That the claimed invention is inherent cannot be established by probabilities or possibilities. Hansgirg v. Kemmer, 26 C. C. P. A. (Patents) 937, 102 F. 2d 212, 40 USPQ 665. We are of the opinion that since it is speculative whether the desired function of forced lubrication will occur, it cannot be said that it is inherent. .
For the foregoing reasons, we are of the opinion that the examiner and the board were correct in holding that certain of the above discussed portions of claim 6 were not supported by the disclosure, and are therefore not for the same invention disclosed in the original patent. The remaining claims on appeal each recite certain of the above discussed elements of the structure which we have found not to be supported by the disclosure, and we are of the opinion that they are unpatentable to appellant for the same reasons given above.
It is again noted that both the examiner and the board held the above claims unpatentable for other reasons in addition to being unsupported by the disclosure of the original patent. However, since we have determined that the claims were properly rejected on the ground of lack of disclosure in the original patent, it is, in our opinion, unnecessary to consider the other rejections of the claims. In re Miller, 34 C. C. P. A. (Patent) 910, 159, F. 2d 756, 72 USPQ 512; In re Rose, 42 C. C. P. A. (Patents) 817, 220 F.2d 469, 105 USPQ 237.
For the foregoing reasons, the decision appealed from is affirmed.
JacksoN, Judge, retired, recalled to participate.
O’Connell, J., was present at the argument of this case, but, by reason of illness, did not participate in the decision.