264 F.2d 901
 Application of Robert TOUVAY and Philippe Tommy Martin (Societe Anonyme des Manufactures des Glaces et Produits Chimiques de Saint-Gobain, Chauny & Cirey, Assignee-Substituted).
 Patent Appeal No. 6382.
 United States Court of Customs and Patent Appeals.
 December 15, 1958.
 As Corrected April 22, 1959.
 
 John L. Seymour and Bauer & Seymour, New York City (N. Douglas Parker, Jr., Washington, D. C., of counsel), for appellants.
 Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.
 Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges.
 MARTIN, Judge.
 
 
 1
 This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection by the examiner of apparatus claims 25, 26 and 28 to 31 inclusive, of application Serial No. 165,858, for "Method and Apparatus for Polishing." Certain claims drawn to a method of polishing glass and a composition usable therewith, have been allowed.
 
 
 2
 The appealed claims relate to an apparatus for grinding and polishing glass surfaces comprising a rigid base having a working face composed of a rubbery resin such as natural rubber or polyvinyl chloride, which resin may be mixed with a filler such as sawdust. The hardness of the material composing the working face as measured on the Shore scleroscope scale[1] is disclosed as "being somewhere near 84-92 on that scale." The rigid base is attached to suitable driving means to rotate the base during the polishing operation. In practice, the device is utilized to rub the surface to be polished with an appropriate abrasive polishing sludge.
 
 
 3
 Claims 25 and 28 are representative of the claims on appeal and read as follows:
 
 
 4
 "25. A grinding and polishing apparatus adapted for use in the smoothing of surfaces of objects such as glass and stone comprising a hard base adapted to exert pressure evenly on the surface of the object, a rubbing body covering said base consisting essentially of a layer of rubbery resin having a wet hardness circa shore 84-92, and driving means connected to said base whereby to rub the surface with the said body.
 
 
 5
 "28. A glass and stone polishing tool adapted to the polishing of glass, having a rigid base and a thin polishing face composed of substantially equal parts of a soft wood sawdust, polyvinyl chloride, and a plasticizer, and having a hardness circa shore 84-92."
 
 
 6
 The Board relied on the following references:
 
 
 7
 Groff 1,966,856 July 17, 1934; Crowley 2,057,882 October 20, 1936; Diehl 2,279,450 April 14, 1942; Benner 2,309,819 February 2, 1943; Gapen et al. 2,434,207 January 6, 1948.
 
 
 8
 In affirming the examiner's rejections, the Board of Appeals did not refer specifically to the patents to Groff and Crowley, and discussion of those patents was expressly omitted from the brief for the Commissioner. They will not be considered further here. In re Libby, 255 F.2d 412, 45 C.C.P.A., Patents, 944.
 
 
 9
 The Diehl patent shows a gasket composed of a synthetic elastomer to which have been added asbestos fibres and comminuted cork to provide a desired hardness of between substantially 75 and 100 as measured on a Shore hardness gauge. The hardness range disclosed is taught to be desirable to provide "the desired compression and rebound or cushioning qualities for sealing purposes."
 
 
 10
 Benner shows a device for grinding and polishing glass sheets comprising a rotatable support covered with a polishing pad. The polishing pad may be made by impregnating a fibrous material such as sisal, manila or jute with a solution or dispersion of an elastomer. The elastomer is disclosed as "vulcanized to a tough, more or less hard but yieldable resilient texture." Alternatively, nonfibrous pads of rubber or synthetic elastomers of the class of copolymers of butadiene with acrylonitrile or styrene or copolymers of chloroprene may be made whose resilience is disclosed by Benner as "comparable to the tread of an automobile tire." Benner further teaches the use of pads of varying degrees of hardness dependent upon the "size and nature of the abrasive being used" and the degree of hardness of the glass composition being polished. The hardness of the pad is variable in accordance with these criteria and the further recognition by Benner that:
 
 
 11
 "Soft pads tend to give less scratches than stiffer ones, but wear out more rapidly and take slightly more power. Hence I prefer to use the hardest pad in each case which I can without scratching the work." (Emphasis ours.)
 
 
 12
 Benner shows forming pads of differing hardness by impregnating the resin matrix with "carbon black and similar fillers" as well as by other practices, all of which means "are familiar to skilled rubber workers."
 
 
 13
 Gapen et al. shows an automobile tire in which wood chips are incorporated in the rubber tread for increasing traction and grip properties. The patentees, while intending their invention to apply primarily to tires, recognize that the rubber-wood chip admixture may be useful for other purposes "where nonslipping qualities are especially needed."
 
 
 14
 Appellants maintain that since a number of method claims pertaining to the glass grinding and polishing process disclosed herein have been allowed, the apparatus which performs the process is therefore patentable. Of course, this is not the law. It is well settled that the allowability of one set of claims cannot be predicated on the patentability of other claims in the same application. In re Wright, 256 F.2d 583, 45 C.C.P.A., Patents, 1005; In re Schutte, 244 F.2d 323, 44 C.C.P.A., Patents, 922. The apparatus and the process must each independently meet the test of patentability.
 
 
 15
 Applicants cite In re Barnett, 155 F.2d 540, 544, 33 C.C.P.A., Patents, 1119, to substantiate their contention. We agree with the principle of that case that:
 
 
 16
 "If the machine performs a new, useful, inventive method, the party is entitled to method claims along with his machine claims not only because his method requires protection but because they are related inventions." (Emphasis ours.)
 
 
 17
 The requirement of "invention" is applicable to all claims presented, irrespective of the allowance of other claims in the application, be they in the same or different statutory classes.
 
 
 18
 Appellants lay great stress on the fact that their apparatus facilitates wet polishing which eliminates the excessive internal friction occasioned by the dry polishing stage allegedly required by the prior art. However, the primary reference, Benner, in describing both his method and apparatus, includes the use of water together with various abrasives of different granularity. For example, in claims 4 and 7 of the said patent, the following is set forth:
 
 
 19
 "Claim 4: In an apparatus for finishing glass surfaces, a porous resilient pad comprising felted fibres in an elastomer matrix, said pad having an irregularly porous working face and being rotatable about an axis, and means for introducing abrasive powder and water between the pad and the glass surface in proximity to the axis. (Emphasis ours.)
 
 
 20
 "Claim 7: In the surfacing of glass, the method which comprises applying abrasive to the surface thereof by flowing said abrasive with water admixed therewith through the pores of a resilient porous pad and thereafter wiping said abrasive over the surface of the glass by impulsion from said pad. (Emphasis ours.)
 
 
 21
 Appellants argue that Benner cannot be used as a reference because the apparatus and method disclosed therein were used only for grinding glass and not for polishing it, whereas the appellants' apparatus performs both "grinding" and "polishing." It appears that appellants are endeavoring to establish two or more independent processes where only one exists. The process of treating glass after its formation includes grinding with course abrasives to remove the major defects, then with finer abrasives to remove the microscopic imperfections. In this industry, this latter action is termed "polishing." Whenever abrasives are used, no matter how fine a grinding action is achieved, the surface of the subject matter is being modified. Throughout the disclosure of the Benner patent the patentee refers to the apparatus shown as a polishing device and discloses in great detail the different types of abrasives to be used during the different stages of operation. Benner discloses a method and tool to finish glass after it has been formed including both grinding and polishing. There is nothing in the record to indicate that the Benner apparatus does not perform the polishing function set forth herein.
 
 
 22
 Appellants further contend that the polishing apparatus of the instant claims comprising a resinous layer "having a wet hardness circa shore 84-92" attains the greatest possible efficiency in polishing plate glass. In support of this claim, the appellants have filed an affidavit which reveals the variation of "efficiency" with change in hardness, both within and without the range of Shore 84-92. It will be noted that the affidavit itself is not explicit with regard to the degree of hardness that is required to obtain the results claimed, in that it states:
 
 
 23
 "The inventors have discovered that if the polishing surface is too hard, that is if it is far above the range shore 84-92 filasses occur. On the other hand, if the material is too soft, too far below the range 84-92, the phenomenon of orange peel appears." (Emphasis ours.)
 
 
 24
 The record contains no assertion that any particular value of polishing "efficiency" as measured by the "coefficient of `wear'" is of critical importance in the glass polishing art. It will be further noted that the above quoted paragraph of the affidavit refers to certain imperfections known as "filasses" and "orange peel." In another part of the affidavit, these two terms are defined, but nowhere in the record is there any showing that these flaws are solely avoided by the use of a glass polishing device having a hardness "circa shore 84-92." It is well established that "proportions or values are critical only when they involve a difference in kind rather than in degree." In re Bourdon, 240 F.2d 358, 360, 44 C.C.P.A., Patents, 740, and cases cited therein. Accordingly, the affidavit is not deemed persuasive in establishing the criticality of the hardness of the polishing pad, or, in other words, that the hardness limitation renders the appealed claims patentable.
 
 
 25
 Coming now to the specific claims on appeal, the rejection of claim 25 as unpatentable over Benner alone was affirmed by the Board of Appeals. The Benner patent reads in part as follows:
 
 
 26
 "I have found it desirable to use pads of different degrees of hardness, depending upon the size and nature of the abrasive being used. The different degrees of hardness are obtained by varying the composition of the impregnating matrix by use of carbon black and similar fillers in the rubber mix as well as by the use of various accelerators and vulcanization practices, all of which means are familiar to skilled rubber workers. The finer the abrasive, the stiffer the pad which may be advantageously used. Likewise, the softer the abrasive (Mohs' scale of hardness), the harder or stiffer the pad advantageously may be made. Emery for instance should be used with a softer pad than sand of the same grit and silicon carbide with a still softer one. Soft pads tend to give less scratches than stiffer ones, but wear out more rapidly and take slightly more power. Hence I prefer to use the hardest pad in each case which I can without scratching the work."
 
 
 27
 It is apparent that Benner determines the hardness of his pad by empirical analysis of several features. The coarseness of the abrasive, as evidenced by the excerpt quoted above, is one such feature. In addition, Benner states that when "working with two different glass compositions having different degrees of hardness that it is in general desirable to use a somewhat softer pad on the harder glass * * *", thereby indicating a second determining factor.
 
 
 28
 Therefore, the Benner patent discloses those criteria by which the hardness of the rubber pad disclosed therein may be chosen. It would be within the capabilities of any person skilled in the glass polishing art, and thus not require patentable invention, to discover the optimum or workable hardness range by routine experimentation. In re Aller, 220 F.2d 454, 42 C.C.P.A., Patents, 824; In re Bourdon, supra.
 
 
 29
 We accordingly agree with the Board's analysis of the Benner disclosure. The Board found as follows:
 
 
 30
 "Thus it is clear that Benner contemplates the use of the hardest pad which can be used without scratching the work just as appellants have done. It is deemed immaterial that Benner has not stated specific values of hardness. The effects of different ingredients and methods of manufacture upon the specific hardness are known to workers in the art as shown by Diehl."
 
 
 31
 We affirm the Board's rejection of claim 25 as unpatentable over Benner alone. It is therefore unnecessary to consider the other rejection of claim 25 or to further refer to the Diehl patent. In re DeJarlais, 233 F.2d 323, 43 C.C. P.A., Patents, 900.
 
 
 32
 Claim 26 is similar to claim 25 with two exceptions, namely, the word "thin" is used to qualify "layer of rubbery resin" and "the rubbing body" is set forth as containing sawdust. In rejecting claim 26 the Board of Appeals held that "the addition of sawdust is merely a matter of choice since it has not been shown to be productive of any different result than the fibrous material incorporated in the rubber body of Benner." In addition to the above rejection predicated on the reference Benner alone, the Board also found that "since Benner teaches the comparable properties between the tire art and that of polishing pads, we do not think that there would be any invention in using rubber having sawdust incorporated therein as taught by Gapen et al." Therefore, the Board of Appeals rejected claim 26 as unpatentable over Benner alone or in combination with Gapen et al.
 
 
 33
 We find that the word "thin" is a relative term which fails to patentably distinguish over the Benner pad. In addition, the inclusion of the sawdust filler does not define patentably over the fibrous pads disclosed by Benner. It would be within the skill of the art to substitute a sawdust filler for the "carbon black and similar fillers" disclosed by Benner in the paragraph cited, supra. There is no showing in the record that the use of sawdust will accomplish any results other than those naturally expected from the fibrous materials or fillers of Benner.
 
 
 34
 Furthermore, Gapen et al. teach the efficacy of combining sawdust with rubber for increasing traction in automobile tires and for other purposes wherein grip properties are important. Appellants contend that Gapen et al. cannot be used as a reference because that patent is from a non-analogous art. However, it is well settled that the relevance of a reference depends on whether it would suggest to one skilled in the art, in this instance the glass polishing art, to do what appellants have done. This is true even though the reference in question may be alleged to have been derived from a non-analogous art. In re Flick, 210 F.2d 832, 41 C.C.P.A., Patents, 799; In re O'Connor, 161 F.2d 221, 34 C.C.P.A., Patents, 1055. Here, the Benner patent, a reference in the precise art to which the instant application pertains, has disclosed the utilization of rubber "tire-like pads" made "with a resilience comparable to the tread of an automobile tire * * *" and including various means designed to alter the hardness thereof, which means "are familiar to skilled rubber workers." It is therefore clear that the teaching of the inclusion of the sawdust filler particles in the rubber tire of Gapen et al. would be suggested to any person skilled in the art of glass polishing armed with the teachings of Benner. Therefore, we affirm the Board's rejection of claim 26; for the same reasons, we affirm the rejection of claim 29 which does not differ in any material respect from claim 26.
 
 
 35
 In rejecting claim 28, the Board of Appeals stated:
 
 
 36
 "Claim 28 is similar to claim 25 except that it defines the rubbery resin body as being composed of substantially equal parts of soft wood sawdust, polyvinyl chloride and a plasticizer. It does not appear that the particular materials used are critical since all of the claims are not limited to the materials recited. The prior art of record is deemed to show the interchangeability of various synthetic rubbery resins. Thus the use of the particular materials is deemed to be a matter of choice not amounting to invention."
 
 
 37
 We agree that to substitute another "synthetic rubber-like material" for those taught by Benner would be obvious in the absence of any unexpected result accruing thereby.
 
 
 38
 Appellants further contend that the Board in considering each of claims 26 and 28 incorrectly used the word "critical." They argue that the word is one "of process, or of property, not of substance." However, it is obvious that the Board merely used the term to connote the lack of patentable significance of sawdust as an ingredient in the polishing pad in view of the disclosures of the prior art.
 
 
 39
 We affirm the rejection of claim 28 for the above reasons.
 
 
 40
 Claim 30 is essentially the same as claim 26 except that it recites that "the essential and major constitutent" of the polishing pad is a resin. Inasmuch as Benner discloses that "non-fibrous pads of an elastomer" may be used in the polishing device therein described such recitation fails to distinguish over the reference grounds previously applied to claim 26.
 
 
 41
 We also sustain the rejection of claim 31 since the use of sawdust "from soft wood" is considered a matter of choice, not involving invention over the teachings of Benner, alone or in view of Gapen et al.
 
 
 42
 For the foregoing reasons, the decision of the Board of Appeals is affirmed.
 
 
 43
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Shore scleroscope is an instrument which measures the hardness of the work in arbitrary terms of elasticity. A diamond-tipped hammer is allowed to drop from a known height on the material to be tested. As this hammer strikes the material, it rebounds, and the harder the substance, the greater the rebound. The height of rebound is measured on a scale and serves as an arbitrary index of hardness. Condensed Encyclopedia of Engineering, 1928