50 CCPA

**Application of Alexander R. SURREY and George Y. Lesher.**

**Patent Appeal No. 6954.**

United States Court of Customs and Patent Appeals.

June 20, 1963.

Dean Laurence, Herbert I. Sherman, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C., (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, affirming the examiner's rejection of claims 10 through 17 of appellants' application[1] entitled "Aryl N-(Aminoalkyl)-Carbamates and their Preparation" as unpatentable over the prior art. Nine claims were allowed.

The invention relates to (1) certain new carbamates which are useful as local anesthetics, (2) certain new chloroformates which are the intermediates from which the carbamates are prepared and (3) the process of producing the carbamates by reacting the chloroformates with an amine. Illustrative of the invention is the reaction of the inter-

---

1. Serial No. 660,456, filed May 21, 1957.

mediate 2,6-dimethylphenyl chloroformate with 2-dimethylamino-ethylamine to make 2,6-dimethylphenyl N-(2-dimethylamino-ethyl) carbamate: [2]

$$CH_3 \text{—(ring)—} O\text{—}\underset{\underset{O}{\|}}{C}\text{—}Cl \quad + \quad H_2NCH_2CH_2N(CH_3)_2 \quad \longrightarrow$$

$$CH_3 \text{—(ring)—} O\text{—}\underset{\underset{O}{\|}}{C}\text{—}NHCH_2CH_2N(CH_3)_2 \quad + \quad HCl$$

Claims 10 and 15 are exemplary of the appealed claims.

"10. A process for the preparation of a compound having the structural formula

$$R_2 \text{—(ring)—} O\text{—}\underset{\underset{O}{\|}}{C}\text{—}\underset{\underset{R}{|}}{N}\text{—}(CH_2)_nNB$$
$$R_1$$

where R is selected from the group consisting of H and $CH_3$, $R_1$ and $R_2$ each represents a member of the group consisting of methyl and ethyl radicals, n represents an integer from 2 to 3 inclusive, and NB is a radical containing from two to twelve carbon atoms and selected from the group consisting of mono-(lower-alkyl) amino, monocycloalkylamino, di-(lower-alkyl) amino, 1-piperidyl, (lower-alkylated)-1-piperidyl, 1-pyrrolidyl, (lower-alkylated)-1-pyrrolidyl, 4-morpholinyl, 1-pipe-

razyl and alkylated-1-piperazyl radicals, which comprises reacting a chloroformate of the corresponding 2,6-di-(lower-alkyl) phenol with an ethylene-diamine of the formula RHN $(CH_2)_nNB$ in which the symbols R, n, and NB each have the respective values above-assigned.

"15. A 2,6-dialkylphenyl chloroformate having the structural formula

$$R_2 \text{—(ring)—} O\text{—}\underset{\underset{O}{\|}}{C}\text{—}Cl$$
$$R_1$$

where $R_1$ and $R_2$ each represents a member of the group consisting of methyl and ethyl radicals."

The references relied on are: [3]

Cusic     2,683,735     July 13, 1954
Beilstein, 4th Ed., Vol. 6, page 487 (1923).

Nine claims drawn to the carbamates were allowed by the examiner "after a

2. This process is claimed in claim 13, and the intermediate in claim 16.

3. The examiner did not describe the references in his Answer, relying for their

showing was presented establishing that there is, for example, an unexpected pharmacological quality possessed by 2,6-dimethylphenyl N-(3-dimethylaminopropyl) carbamate hydrochloride which is not possessed by 2,4-dimethylphenyl N-(3-dimethylaminopropyl) carbamate hydrochloride. * * *" Rejection of the claims drawn to the process of preparing the carbamates and to the intermediate chloroformate compounds is succinctly stated in the examiner's Answer as follows:

"Claims 10–14, drawn to process, are rejected as being unpatentable over the patent to Cusic which discloses a classic method of preparing carbamic acid esters by the reaction of an amine and a chloroformate. This process is considered obvious in the preparation of the carbamic acid esters on appeal- and only the expected result is revealed in applicants' use of this process to prepare the compounds of the allowed product claims. Application of an old process to different but analogous material is not inventive.

"Claims 15–17, drawn to intermediary products, are rejected as being unpatentable over the reference to Beilstein which discloses 2,4 dimethylphenyl chloroformate, an isomer of the claimed intermediates."

The board affirmed the rejection of claims 10–14 "for the reasons set forth" by this court in In re Larsen, 292 F.2d 531, 49 CCPA 711. It affirmed the rejection of claims 15–17, stating that each claim must be considered on its own merits and that unexpected pharmacological properties in a final product do not provide a proper basis for allowance of claims to the intermediate which has been rejected over a prior art isomer, since such a showing does not provide evidence that the intermediate itself possesses any new or unobvious property.

We have two distinct issues here: whether the intermediates were properly rejected as unpatentable over the Beilstein reference, and whether the process claims were properly rejected as unpatentable over the Cusic patent.

With respect to the rejection of claims 15–17 drawn to the intermediate chloroformate compounds, appellants contend only that evidence of the unobvious local anesthetic action possessed by the final products (carbamates) made directly from the intermediates (chloroformates) is sufficient to prove patentability according to the standard set forth in Parker v. Marzall, 92 F.Supp. 736 (D.C., D.C.).

If the structural similarity between the reference compound and that of the claimed compound establishes a prima facie case of obviousness, then appellants can prevail only if they overcome such prima facie case. Hence, two separate questions are involved: (1) whether a prima facie case of obviousness has been established, and, if so, (2) whether the affidavits presented are sufficient to overcome the prima facie case of obviousness.

The Beilstein reference discloses the compound 2,4-dimethylphenyl chloroformate which the examiner characterized as an isomer of 2,6-dimethylphenyl chloroformate, the compound in claim 16. Appellants point out that the prior art compound is the homolog of the isomer of 2,6-diethylphenyl chloroformate, the compound of claim 17. The examiner supports his holding of obviousness over the Beilstein disclosure with the following rationale:

" * * * Generally, chloroformates are formed by reacting phosgene with xylenols (the hydroxy derivatives of xylenes). *All of the isomeric xylenols are well known in the art.* The chloroformate ester of a 2,4- rather than a 2,6-xylenol is disclosed

description on appellants' brief before the board which does not appear in the record. It would be helpful to us if the examiner described the references thoroughly in his Answer so that we might have the benefit of his interpretation and know the exact portions of the references relied on.

by Beilstein. * * *" (Italics supplied).

Appellants do not challenge the correctness of that reasoning nor the apparent obviousness of the claimed compound, but merely contend that the affidavits of record are sufficient to rebut the examiner's holding. There is no question that the two affidavits concern only the properties of the carbamates and in no way consider the properties of the claimed chloroformates. Under such circumstances we find the affidavits insufficient because they do not relate to the compounds in issue. The properties of the carbamates are inherent in those compounds, and not in any of the reactants from which they may have been prepared. See our concurrent decision in In re Druey,[4] 319 F. 2d 237, 50 CCPA ——. The rejection of claims 15–17 is affirmed.

The Cusic reference discloses a process for preparing carbamic acid esters (carbamates) by heating an aryl chloroformate with an alkalene-diamine in an inert organic solvent. The examiner characterized that reaction as being "a classic method of preparing carbamic acid esters." Appellants admit that Cusic discloses the same type of reaction as claimed, but is applied to different though "somewhat analogous starting materials." They urge the following proposition:

> "Claims to a novel process which utilizes a known type reaction for making a patentable final product ought be allowed where either (a) the final product made by the process is patentable due to non-obvious differences from prior art of the molecular structure, or (b) the principal starting material was unknown at the time the claimed process was invented. Points (a) and (b) serve to distinguish the facts from those of In re Larsen."

Appellants state in their brief that in Larsen this court found:

> "The compounds reacted are conceded to be old"—and—" * * *

the allowance of the claims to the compounds (by the Examiner) was based on the fact that they possessed unique, and presumably unexpected, properties."

Those statements, quoted out of context, do not represent the reasons for the decision in that case. Larsen held that even though the compounds themselves were patentable, the processes by which they were prepared may or may not be obvious, adding further that:

> "In view of the obviously close parallel between the claimed processes and those of the references, we agree with the conclusion of the Patent Office that if the compounds recited in appellant's allowed claims were disclosed in the prior art it would be obvious to a person of ordinary skill in the art to prepare them by the processes set forth in the appealed claims. * * *"

"It is well settled that the allowability of one set of claims cannot be predicated on the patentability of other claims in the same application." In re Touvay, 264 F.2d 901, 46 CCPA 823. Claims to a *method* of preparing a chemical compound must be found patentable independently of claims to the compound itself.

If the instant process claims are patentable, they must themselves be unobvious over the prior art. Whatever may have been the reasons for allowance of claims to the carbamate products, whether because of unobvious structure or property, those unobvious features are inherent in the carbamates themselves, and *not* in the method of their preparation, or in the reactants from which they are produced.

Here we have process claims which define simply "reacting" a particular chloroformate with a particular amine to produce a particular carbamate. That type of reaction is admittedly old. The appealed claims recite no unobvious or critical limitation which might serve

to distinguish them from the prior art. The only distinction is that the particular chloroformates, and consequently the resulting carbamates, are new. Mere novelty of one of the reactants, which is the only novelty alleged here, does not render an otherwise conventional chemical process patentable, since it does not impart anything to the process which is unobvious to one skilled in the art. It constitutes no more than an obvious application of an old process to new compounds. From the point of view of the chemical reaction and the reactive groups concerned, the same reaction takes place. We do not find the fact that one of the reactants here is novel but obvious, while the reactants were old in Larsen, sufficient to convince us that a different result from that decision should be reached here. The substitution of the novel chloroformate into the old reaction seems to have produced only expected results. The rejection of claims 10–14 is also affirmed.

Affirmed.

SMITH, Judge (dissenting).

I disagree with the result reached by the majority as to both the process claims and the product claims.

Process claims 10–14 are not, in my opinion, governed by what the board has found to be "the reasons set forth" by this court in In re Larsen, 292 F.2d 531, 49 CCPA 711. The present case presents a different factual situation from that in Larsen. In Larsen, the reactants in the process were *old*. Here, to the contrary, a *novel* reactant material is called for in the process of claims 10–14. The appealed process claims cover a process in which, at the time the invention was made, (1) the end product was *unknown*, and (2) one of the reactants in the process was *unknown*. The claimed process thus requires selection of two starting materials, (one of which was *unknown* in such a process at the time the invention was made), to make a product, (which also was *unknown* at the time the invention was made). The claimed

process thus requires two *differences* over the prior art as shown by the Cusic reference. These *differences* in my opinion are not obvious within the meaning of 35 U.S.C. § 103. I would, therefore, reverse the rejection of the process claims.

As to the product claims 15–17, I dissent from the majority for the reasons stated in my dissent in In re Druey et al., 319 F.2d 240, 50 CCPA ——.