54 CCPA

### Application of Jiri FARKAS and Frantisek Sorm.

### Patent Appeal No. 7674.

United States Court of Customs and Patent Appeals.

Dec. 8, 1966.

Michael S. Striker, New York City, for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of product claims 3 and 4 and process claims 5–7 in appellants' application [1] entitled "Preparation of 5–Bis–(β–chlorethyl)–Aminomethyl Uracil Hydrochloride."

The invention as claimed relates to 5–bis–(β–chloroethyl)–aminomethyl uracil, its hydrochloride, and a method of producing the latter compound. Claim 3 is representative of the product claims:

3. 5–bis–(β–chlorethyl)–aminomethyluracil. Appellants react 5–chloromethyl uracil with bis–(β–chloroethyl)–amine to obtain the claimed compounds, as reflected in claim 5:

5. Method of producing 5–bis–(β–chloroethyl) – amino – methyl – uracil–hydrochloride, which comprises reacting 5–chlormethyl uracil with bis–(β–chlorethyl)–amine in an organic solvent medium.

Claims 6 and 7 further restrict the claimed method by specifying certain specific solvents, i. e. acetone, and reaction temperatures (–20° to 180° C).

Two issues are presented by the decision of the board and appellants' reasons of appeal:

(1) Whether appellants have submitted sufficient evidence to prove their uracil

---

1. Serial No. 147,163, filed October 24, 1961.

compound and its hydrochloride are useful for the purpose disclosed:

> \* \* \* The substance is marked by low toxicity along with outstanding cytostatic [2] effects and by therapeutical effects in experimental leukemia in rats. \* \* \*

(2) Whether appellants' products and processes are "unpatentable over" Ross [3] in view of Burckhalter [4] and "unpatentable over" Burckhalter, respectively.

Under the view we take of this case, it is necessary to decide only the second issue. It is apparent from the record that the Patent Office position on that issue is predicated on 35 U.S.C. § 103.

The examiner noted that the Ross reference discloses a uracil mustard compound having the structure.

$$HN_3^{~4}C^{~5}C-N(CH_2\cdot CH_2\, Cl)_2$$

The compound is said to possess a "broad spectrum of anticancer activity" in animals. Ross states that "several promising anticancer compounds" are so-called "two-armed mustards" in which a $-N(CH_2\, CH_2\, Cl)_2$ alkylating group is attached to a carrier molecule which is a metabolite or resembles a metabolite. Ross chose uracil and other compounds containing the uracil moiety as a carrier molecule because of their biological importance.[5]

Recognizing that the compound disclosed by Ross has the $-N(CH_2\, CH_2\, Cl)_2$ group attached directly to the uracil ring, rather than to a methyl substituent in the 5-position on that ring as in appellants' compound, the examiner turned to Burck-

Appellants' compound has the structure

$$-CH_2N(CH_2\, CH_2\, Cl)_2$$

2. While we have not been provided with a definition of "cytostatic" by either appellants or the Patent Office, nor do we find any in the authorities available to us, it appears from oral argument that the expression refers to the ability to inhibit growth of tumor cells.

3. Ross, 82 J. American Chemical Society 4585–4591.

4. Burckhalter, 82 J. American Chemical Society 991–994.

5. Because of its import, we reproduce the pertinent disclosure of Ross (footnotes omitted):

> Recently the hypothesis was put forward that alkylating agents consist of a carrier and the alkylating group and that differences in effects and side effects on tumors might be related to the differences in the carrier group. More recently this hypothesis was expanded into a rationale for the design of specific irreversible enzyme inhibitors. This rationale proposed that substrates, properly substituted by an alkylating group, could fit the specific enzyme site for the substrate, then replace a nearby active hydrogen by alkylation, thus resulting in specific irreversible inactivation of the enzyme.
>
> Recent synthetic work in the nitrogen mustard field has resulted in several promising anticancer compounds, such as phenylalanine mustard (sarcolysin), m-phenylalanine mustard, chlorambucil, uracil mustard and benzimidazole mustard. All of the above compounds are so-called "two-armed" mustards in which a bis-(chloroethyl)-amino group is attached to a carrier which is a metabolite or resembles a metabolite. \* \* \*
>
> Uracil was chosen as the carrier (substrate) for the synthesis of a number of monofunctional alkylating agents. The biological importance of uracil and of compounds containing the uracil moiety leads logically to its choice as a carrier; the recent announcement of the broad spectrum of anticancer activity of the difunctional uracil mustard [having the structure shown earlier in this opinion] in animals lends added interest to the synthesis of the monofunctional compounds and gives a standard of comparison in testing. \* \* \*

halter. Burckhalter states that the 5–(substituted methyl)–uracils have received little attention, perhaps due to the instability imposed on the molecule by the substitution of amino, chloro or hydroxyl groups in the 5–methyl group. Nevertheless, because of the importance of those substituted uracils as intermediates in the synthesis of "antineoplastic" [6] agents, Burckhalter reacted 5–chloromethyluracil with various amines, such as the cyclic amines piperidine and morpholine. The reaction mixture, containing acetone as a solvent, was "warmed" for a few minutes to effect reaction.

"Viewed together," said the examiner, "the two references clearly suggest the coupling of the nitrogen mustard alkylation group of Ross * * * to the uracil containing carrier moiety of Burckhalter." The examiner also thought the process claims define obvious subject matter in view of Burckhalter, the only difference arising through appellants' use of a different amine. The board agreed.

We find no reversible error in that decision. With respect to the process claims, it is apparent from the Burckhalter reference that the prior art has previously reacted amines with 5–chloromethyluracil under process conditions substantially identical to those employed by appellants. No unobvious or critical process condition or step appears in the claims. It seems clear that appellants have simply employed a different starting material in a generally old reaction. While appellants argue that there "is not the slightest hint" in Burckhalter that bis – (2 – chloroethyl) – amine may be reacted with 5–chloromethyl uracil in the

same manner as morpholine or piperidine, appellants have presented no reason or authority to convince us that the reaction would not be expected to take place, or that the amine would behave in a manner different from those of Burckhalter. See In re Ross, 305 F.2d 878, 49 CCPA 1276. Under the circumstances, we agree with the board that:

> While appellants suggest that several linkages are possible in this reaction, we do not believe that a chemist would expect anything but the reaction obtained, which is also that in Burckhalter et al. The fact that appellants employ a different amine, namely, nitrogen mustard, for reaction with the chloromethyluracil is not persuasive of patentability because the reacting groups are the same and the reaction takes place in the same manner. * *

See also In re Albertson, 332 F.2d 379, 51 CCPA 1377; In re Hoeksema, 332 F.2d 374, 51 CCPA 1474; In re Norman, 309 F.2d 517, 50 CCPA 817; In re Surrey, 319 F.2d 233, 50 CCPA 1336, certiorari denied 375 U.S. 930, 84 S.Ct. 332, 11 L.Ed.2d 264; In re Larsen, 292 F.2d 531, 49 CCPA 711, certiorari denied Larsen v. Ladd, 370 U.S. 936, 82 S.Ct. 1580, 8 L.Ed.2d 806.

Likewise, we agree the compounds of claims 3 and 4 would be obvious to one of ordinary skill in the art in view of the cited references. Appellants urge that the board erred in stating that Burckhalter "provides the necessary suggestion to make the substitution or deviation from" the Ross compound.[7] Clearly that is not the case. As noted earlier, Ross discloses that uracil *and compounds con-*

---

6. Dorland's Illustrated Medical Dictionary, 23rd Edition, defines "antineoplastic" as "Inhibiting or preventing the development of neoplasms." Neoplasms, in turn, are defined as "Any new and abnormal growth, such as a tumor."

7. A similar argument prevailed in In re Bergel, 292 F.2d 955, 48 CCPA 1102. There this court reversed a rejection of a claim directed to p-Bis-(2-chloroethyl)-aminophenylalanine, a nitrogen mustard compound useful in anti-tumor therapy, stating:

> * * * The mere fact that it is *possible* to find two isolated disclosures which might be combined in such a way to produce a new compound does not necessarily render such production obvious unless the art also contains something to suggest the desirability of the proposed combination. * * *

That defect in the reference combination employed in the rejection in *Bergel* is, in our view, not present in the references employed here.

*taining the uracil moiety* are logical choices for the carrier moiety of the nitrogen mustard group. Ross uses uracil per se as the carrier. In addition, however, Burckhalter discloses that a compound containing the uracil moiety, 5-chloromethyluracil, is useful as an intermediate in forming antineoplastic agents.

John Lewis Smith, J., dissented.

In our view, the references provide adequate suggestion to do what appellants have done. Considering all the evidence —the close structural similarity of appellants' compounds to that of Ross, the readily available method of making the compounds as shown by Burckhalter and the similar properties and uses—we agree with the board that the claimed compounds are obvious in view of the prior art.

See also Cust. & Pat. App., 368 F.2d 1022.

The decision is affirmed.

Affirmed.

SMITH, J., concurs in the result.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.