O’Connell, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner’s rejection of claims 1,2,5, and 7 of appellant’s application, No. 154,739, for a patent on a cleaning composition. The remaining claims of the application were held to be not readable on the elected species and were not considered by the board. Accordingly they are not before us for consideration. In re Hill et al., 34 C.C.P.A. (Patents) 783, 158 F.2d 1001, 72 USPQ 263.
Claims 2, 5, and 7 are dependent upon claim 1 and are each more specific than that claim as to one of the elements of the composition. However, the alleged patentability of claims 2, 5, and 7 depends entirely on the matter contained in claim 1, and it is clear that all the rejected claims must stand or fall together. Accordingly it will be .sufficient for the purposes of this opinion to consider only claim 1 •specifically. That claim is as fallows:
1. A detergent composition comprising between, about 10 and about 20% of a -detergent mixture consisting essentially of from about 85 to about 50% of a ■water-soluble alkyl aryl sulfonate and from 15 to 50% of an amidoalkylidene .sulfonate of the structure :
R — OO—N— (Ctt) „S03A R'
■where A is selected from the group consisting of hydrogen and alkali metals, n is a small whole number of from one to about five, R is a higher alkyl radical, and R' is selected from the group consisting of hydrogen, alkyl, aryl and cyclo-aliphatic radicals, said amidoalkylidene sulfonate containing fatty material as *946 an impurity in. an amount which inhibits sudsing of aqueous solutions thereof, said composition also containing an alkylolamide of the structure:
R — CO—N— (CH2)»— OH R'
■where n is a small whole number from one to about five, R is a higher alkyl radical, and R' is selected from the group consisting of hydrogen, alkyl, ary] and cyclo-aliphatic radicals, in an amount of at least 0.1%' sufficient to overcome the suds-inhibitory effect of said fatty material impurity, at least 40% of an alkali metal polyphosphate selected from the group consisting of alkali metal pyrophosphates' and alkali metal tripolyphosphates, and the residue supplemental builders and water. ,
The following references were relied on by the examiner:
Martin, 2,156,996, May 2,1939.
Richardson, 2,383,737, Aug. 28,1945.
Lewis, 2,477,383, July 26,1949.
Strain, 2,486,922, Nov. 1,1949:
The board, however, relied only upon the Richardson and Lewis patents. The other references, therefore, need not be considered here.
The material features of the claimed- invention are sufficiently brought out in the claim reproduced above.
While the claims involve structural formulae, it is stated in appellant’s brief that those formulae need not be considered in detail, since “it is conceded that amidoalkylidene sulfonates and alkylolamides coming within these formulae' are disclosed in the patents relied upon by the Patent Office.”
Claim 1 calls for a detergent composition which, in addition to supplemental builders and water, which admittedly are not important to the question of patentability, comprises four components; namely (1) an alkyl aryl sulfonate, (2) an amidoalkylidene sulfonate with a fatty material impurity, (3) an alkylolamide of a specified structure, and (4) an alkali metal pyrophosphate or tripolyphosphate. It is stated in appellant’s brief that the second component above-mentioned, ini eluding the impurity, is commercially available under the trade name “Igepon.”
It is pointed out in appellant’s application that he has discovered that the fatty impurity in the amidoalkylidene sulfonate inhibits the sudsing of the composition and that an alkylolamide, when added to the composition in the amount set forth in claim 1 overcomes this inhibiting effect with a resultant increase in sudsing. It does not appear to be alleged that any of the proportions of ingredients set forth in the appealed claims are critical or that they involve anything more than judicious selection within the skill of the ordinary worker in the art.
*947 The Lewis patent discloses a detergent comprising (1) a phenyl polypropylene sulfonate, which sulfonates, as conceded in appellant’s brief, are alkyl aryl sulfonates, (2) an amidoalkylidene sulfonate (“Igepon”) and (3) tetrasodium pyrophosphate, which is an alkali metal pyrophosphate. Lewis thus' discloses a detergent composition containing the first, second, and fourth of the four essential components of appellant’s claim 1, as above set forth. The third claimed, ingredient, namely, the alkylolamide of the structure set forth in claim, is not disclosed by Lewis.
The board found that the Richardson patent discloses the use in detergents of “appellant’s amidoalkylidene sulfonate,” and that holding, in our opinion, is correct. It is not, in fact, disputed here by appellant, who concedes in his brief that “the actual substances disclosed in Lewis and Richardson, if combined, inherently give a detergent composition having the characteristics of the appellant’s.” Accordingly, as properly stated by the board, the sole issue here is whether it involved invention to add the alkylolamide of Richardson to the above-described detergent mixture of Lewis. That question was answered in the negative by. the board, and we agree with its decision for the following reasons.
The Richardson patent discloses that alkylolamides, including those of the structure set forth in appellant’s claims, are effective for increasing the cleansing and sudsing properties of a wide variety of detergents, including “Higher fatty acid amides of low molecular weight aminoalkyl sulfonic acids, such as the ammonium salt of the oleic acid amide of methyl taurine.” The compounds thus described include appellant’s amidoalkylidene sulfonates. While Richardson makes no mention of fatty impurities, it is stated in appellant’s application that “the commercial grades of amidoalkylidene sulfonates nearly always contain from 1 to about 20% or more of fatty material as an impurity,” and it follows that such impurities would normally be present in such sulfonates as used by Richardson and Lewis.
Since Richardson discloses the desirability of adding an alkylola-mide of the structure claimed by appellant to detergents which include amidoalkylidene sulfonates, and since the Lewis patent discloses detergents containing such sulfonates, we are of the opinion that it would not involve invention to combine the Richardson and Lewis disclosures in the manner above described, which would produce the detergent claimed here by appellant. The detergents disclosed by Lewis are of the type which Richardson proposes to improve by the addition of his alkylolamides.
Since the references fairly suggest a detergent composition satisfying the requirements of the appealed claims, it is immaterial *948 that they do not state that such a composition will function in the* manner set forth in appellant’s application, or that it will have the-specific advantages which he alleges for it. It is well settled that a-patent cannot be properly granted for the discovery of a result which-would flow naturally from the teaching of the prior art. In re Kepler, 30 C. C. P. A. (Patents) 726, 132 F. 2d 130, 56 USPQ 177; In re Bourdon, 44 C. C. P. A. (Patents) 740, 240 F. 2d 358, 112 USPQ 323; In re Eisenhut, 44 C. C. P. A. (Patents) 974, 245 F. 2d 481, 114 USPQ 287.
It is true that Richardson does not appear to have recognized' that the amidoalkylidene sulfonates contain fatty impurities which inhibit sudsing, or that the inhibiting effect of such impurities may be overcome by the claimed alkylolamides, but he does recognize that improved cleansing and sudsing result when the latter compounds are-added to detergents which contain the former. It is not necessary that a patentee should understand the scientific principles underlying his invention, so long as he makes a sufficient disclosure to enable-other persons skilled in the art to practice the invention. In re Charles Ebert et al., 19 C. C. P. A. (Patents) 1087, 57 F. 2d 356, 13 U. S. Pat. Q. 124.
Moreover, we agree with the Patent Office tribunals that, so far as-the instant case is concerned, there is no substantial difference between increasing the sudsing properties of a detergent and overcoming the-inhibiting effect of an impurity in the detergent. The net result in either case would be an improvement in the production of suds.
The situation here presented is similar to that in In re Gauerke, 24 C. C. P. A. (Patents) 725, 86 F. 2d 330, 31 USPQ 330. In that case the appellant had discovered that the addition of sunflower seed oil to certain resins would prevent them from yellowing. The prior art taught the use of vegetable oil in the preparation of such resins and sunflower seed is, of course, a vegetable oil. It was held that since the art fairly suggested the addition of sunflower-seed oil to the resins, it was immaterial that the specific advantage with respect to-yellowing was not disclosed, since that advantage would inherently be obtained when the oil was used. Similarly, in the instant case, the proposed combination of the Richardson and Lewis disclosures-will inherently result in the overcoming of the suds inhibiting effect of the fatty impurities which, appellant states, are nearly always present in the amidoalkylidene sulfonate.
Appellant contends that the board’s holding in the present case is in conflict with its decision in Ex parte Vitale et al., Appeal No. 422-20, in the file of U. S. patent No. 2,746,931. That decision, of course, is not controlling here. So far as the two decisions may appear to *949 be in conflict, we are of the opinion that the decision in the instant case, rather than the earlier one, states the correct principles to be followed.
We have given careful consideration to appellant’s arguments but are of the opinion that the compositions covered by the appealed claims are fairly suggested by the prior art cited and that neither appellant’s alleged discovery that such compositions are more efficient than might have been expected, nor his discovery of a principle underlying such efficiency, constitutes a patentable invention.
The decision of the Board of Appeals is affirmed.