49 CCPA

**Application of Carlton E. BEYER and Robert B. Dahl.**

**Patent Appeal No. 6733.**

United States Court of Customs and Patent Appeals.

Jan. 15, 1962.

Miles D. Pillars, Washington, D. C. (William M. Yates, and Griswold & Burdick, Midland, Mich., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge William H. KIRKPATRICK.*

SMITH, Judge.

This appeal arises from the affirmance by the Board of Appeals of the examiner's rejection of claims 4 through 9 of appellants' application, Serial No. 567,663, filed February 24, 1956, for a patent on an "Improved Method for Molding Expandable Thermoplastic Resinous Materials and Molded Articles Thereby Obtained."

The improvement disclosed and claimed is essentially the molding of expandable or so called "foamable" thermo-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

plastic resinous materials using conventional types of injection molding apparatus. Prior to the disclosed improvement, expandable varieties of thermoplastic materials had been molded from granular or bead form thermoplastic materials to form porous, multi-cellular structures. As explained in appellants' brief:

"* * * This expansion is brought about by the action of heat on thermoplastic resinous granules containing a blowing agent which, most commonly, is a highly fugacious liquid which is dissolved or otherwise intimately incorporated within the resinous material. When such granules are heated, the thermoplastic resinous component softens. Concomitantly, the fugacious liquid blowing agent vaporizes and the resulting vapor expands. The pressure exerted by this expanding vapor is effective to expand the resinous material, when the latter is sufficiently thermoplastified (i.e. heat-softened), to the desired foam structure.

"When a mass of such foamable granules is caused to undergo this thermal expansion while contained in a closed vessel, the expanding granules will fuse together to give a multicellular, foamed body corresponding to the shape of the vessel. Of course, the volume of the vessel must be such that the freedom of the granules to expand is sufficiently curtailed to result in the desired molding. The pressure exerted by the vapor of the expanding blowing agent is effective, with the thermoplastic condition of the mass being fabricated, to cause coalescence of the softened granules to give the desired continuous structure.

"The ability of the expanding thermoplastic resinous granules to fuse together has provided the art with a method of forming shaped molded objects of multicellular, foam-like structure. The method

above discussed for forming such shaped molded objects, however, is ill-adapted to the efficient and inexpensive production of such molded articles because of its inherently cumbersome nature and limitation to practices analogous to those in compression molding techniques."

The molding of conventional non-cellular thermoplastic resins by injection molding techniques is well known. However, according to appellants, such techniques did not lend themselves to the injection molding of the porous, multi-cellular types of thermoplastic granules for the reason that when such granules are heated to the injection temperatures, the blowing agent causes the expansion of the materials in the heating chamber of the injection molding apparatus and thus there is injected into the molds an already expanded plastic mass which is incapable of further expansion and will not have the capacity to expand further in the mold as is desired.

Claim 4 which is typical of the rejected claims is as follows:

"4. Method for molding expandable granules of thermoplastic resinous material into molded foam structures which comprises charging a mass of said granules into the dischargeable injection chamber of an injection molding apparatus; then, in intermittent molding cycles, forcing said mass under pressure sequentially into and through a first cold zone in said chamber wherein a portion of said mass is compacted in solid granular form while being maintained at a temperature beneath its foaming temperature; a second heated zone adjacent to the first zone in said chamber wherein a portion of said mass is heated to a flowable condition under the application of an adequate quantity of heat to cause it to attain a foaming temperature; and a discharge zone in said chamber from which a portion of said heated mass is injected into a mold form wherein the mass expands to the confining limits of the mold form to a

molded foam structure; the solid compacted portion of the mass in the first zone continuously maintaining the heated portion of said mass in the second zone under pressure to restrain substantial foaming therein throughout said intermittent cycles."

It will be seen, as set forth in appellants' brief, that:

"Claim 4 defines the method of the present invention for molding expandale granules of thermoplastic resinous material into molded foam structures in its broadest aspect. It recites the integrated steps of: (1) charging the expandable thermoplastic resinous granules into the dischargeable injection chamber of an injection molding apparatus; (2) applying injection pressure to the mass of said granules to urge the same forward through a relatively cold zone of said chamber and into a relatively hot zone thereof whereby a portion of said mass is injected into a cooperating mold, a second portion is contained in the hot zone in a flowable and unexpanded condition, *and a third portion is contained as a solid compacted mass of granules within the cold zone, said solid compacted mass being effective to maintain the said second portion in the hot zone under pressure during intermittent molding cycles to restrain substantial foaming thereof.*"

The other claims on appeal are dependent claims. Claims 5, 6, and 7 are directly dependent on claim 4, while claims 8 and 9 are directly dependent on claim 7 and thus also dependent on claim 4.

The dependent claims differ from claim 4 in specifying a relationship between the total amount of granules in the injection chamber and the amount discharged therefrom in each molding cycle (Claims 5 and 6), and the additional step of stopping the flow of the heated mass from the discharge end of the injection chamber except during the actual injection cycle (claim 7). Claim 8 specifies that the flow is stopped by "valving means," while claim 9 provides for flow stoppage by directing the flow of heated material through a flow restraining passage in which the heated material solidifies when the mass is not being subjected to injection pressure.

The references relied upon in rejecting the claims are:

| | | |
|---|---|---|
| Tucker | Re. 22,899 | July 15, 1947 |
| Hagen | 2,514,390 | July 11, 1950 |
| Stastny et al. | 2,744,291 | May 8, 1956 |
| Carlson | 2,797,443 | July 2, 1957 |

The rejection, affirmed by the Board of Appeals, was, as stated by the board, that claims 4 through 9 were "unpatentable over Stastny et al. in view of Carlson, Tucker and Hagen."

The board in its opinion correctly summarized the teachings of these references as follows:

"Stastny et al. teach broadly that expandable polystyrene beads may be injection molded and may also be molded by the introduction of heated foamed-up masses into cold molds to produce porous shaped articles (column 2, lines 49 to 53).

"Tucker discloses plunger-type injection molding of a thermoplastic material wherein the material passes through a series of controlled temperature zones which may be of progressively higher temperatures (column 5, lines 62 to 70 and column 6, lines 11 to 39). Tucker also discloses the use of cooled molds for receiving the injected material (column, 5, lines 62 to 65, lines 71 to 75; column 6, lines 1 to 38; column 10, lines 17 to 24).

"Hagen discloses plunger injection molding with apparatus adapted for valuing [sic] of the melt and also for solidification of the melt in the sprue immediately following the injection stroke (column 5, lines 41 to 51).

"Carlson teaches extruding expandable polystyrene beads, containing pentane as the expansion agent, into open or closed molds (column 1, line 22 and column 3, line 9)."

We agree with appellants that no single reference identically discloses or describes the invention as claimed in the appealed claims. Appellants challenge the combination of references relied upon by the board in affirming the examiner's rejection. This challenge is based on differences which appellants find in the reference patents.

The issue thus arises under 35 U.S.C. § 103 and requires a determination as to whether these "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art" of molding porous shaped articles from masses of expandable thermoplastic materials.

Stastny et al., the principal reference, is said by appellants to be clearly distinguished because:

"Stastny et al. properly interpreted can only teach the injection of the unexpanded expandable molding granules into a closed mold wherein they are heated and expanded to prepare the desired porous articles."

While Stastny et al. disclose a method for forming porous shaped articles from expandable, granular, synthetic, thermoplastic material in which the material is charged into a closed mold in an amount insufficient to fill the mold and then heating the material in the mold to a temperature at which the material foams and fills the mold, alternative methods are expressly set forth in the specification which states in column 2, lines 49–52:

"The production of the porous shaped articles may also be carried out by injection moulding methods, in spraying machines, in vulcanizing presses or by the introduction of the heated foamed-up masses into cold moulds."

Stastny et al. also disclose the use of polystyrene containing about 6% of petroleum ether and comminuted to injection molding grain size (col. 2, lines 26–28) as one example of an expandable, granular, synthetic, thermoplastic material. The blowing agent may be a "volatile liquid hydrocarbon * * * selected from the class consisting of pentane, * * and petrol ether * * *" (col. 8, claim 10).

The Tucker reference discloses injection molding of either thermosetting or thermoplastic granular resinous materials (col. 1, lines 3–5) by plunger-type injection molding apparatus. Granules in the injection cylinder are rendered fluent for injection into a mold cavity by heating the granules at a temperature which is maintained constant by using a material melting at a constant desired temperature as a heat transferring medium within a jacket surrounding the injection cylinder. When operating with thermoplastic materials, the mold is cooled below the setting point of the plastic (col. 5, lines 62–65). In one form of injection cylinder (Fig. 2), heating is carried out in separate zones A, B and C at temperatures which may increase from zone to zone, the temperature around zone A at the rear of the cylinder being relatively low to prevent softening of the plastic in this zone, the temperature around zone B being somewhat higher to begin the softening of the plastic, and the temperature around zone C being still higher to render the plastic completely fluent (col. 6, lines 11–24). In an alternative procedure, plastic material may be heated in the injection cylinder to a suitable low temperature at which the material retains its granular form, and, in such form, is injected into the mold (col. 10, lines 7–24).

While we agree with appellants that the Tucker reference does not refer to expandable thermoplastic materials and

specifies a temperature in the heated mold which is sufficiently high so that the material is heated to its *setting* temperature, we think that one of ordinary skill in this art would be expected to know how to adjust the operation of the Tucker apparatus to accommodate various types of plastic materials. Thus we would expect such a person of ordinary skill in the art to be able to regulate the temperature and time of the heating zones of the Tucker apparatus to produce the desired condition of the heated plastic materials to be discharged therefrom.

It would, therefore, be obvious to one skilled in the plastics molding art from the teaching of Stastny et al. to apply injection molding techniques to the molding of expandable, granular, thermoplastic materials. One form of apparatus for so doing is that shown in Tucker which discloses the separately controlled heating zones upon which appellants depend to properly condition the expandable, granular, thermoplastic materials they propose to use. Since the properties of such materials are taught by Stastny et al. as well as by the Carlson reference,[1] it would have been obvious to one of ordinary skill in this art at the time the invention here in issue was made, to regulate the operation of the Tucker apparatus so as to discharge the materials into the molds in the condition required to the end that the expansion of the materials would occur in the closed molds.

We have also considered the additional features covered in claims 5 to 9 inclusive but are unable to find wherein they add anything patentable to the process of claim 4. Each feature of these claims appears to be nothing more than that which one of ordinary skill in this art should be expected to know and expected to do in regulating the Tucker apparatus for use in the injection molding of granular expandable thermoplastic materials.

It seems inescapable to us that applying the injection molding method taught by Tucker to the molding of the expandable material of Stastny et al. inevitably would result in the material being compacted in the cold zone and maintained therein at a temperature below the foaming temperature. Tucker expressly states that the temperature in the cold zone is maintained relatively low to prevent softening of the plastic in that zone. Stastny et al. indicate that an expandable thermoplastic material does not foam until after the material has softened. It is thus evident that under the conditions taught by Tucker, the expandable material of Stastny et al. would be compacted in the cold zone and maintained at a temperature below the foaming temperature.

The prevention of premature foaming in the heated zone by the compacted mass in the cold zone would appear to be an inherent result of applying the injection molding method taught by Tucker to the expandable material of Stastny et al. Appellants do not suggest that premature foaming in the injection cylinder is prevented by the compacted mass in the cold zone because of some feature of their method or characteristic of the expandable material they use which is not found in either Tucker or Stastny et al. Appellants' specification states, as the board noted, that the claimed method "may be conducted under conditions which are similar or analogous to those required for injection molding conventional, nonexpanding thermoplastic resinous materials," and that "most conventional injection molding apparatus can be employed * * *." Further, appellants state in their specification that "any thermoplastic resinous material which can be expanded or foamed by conventional techniques may advantageously be formed into molded foam structures in accordance with the method of the present invention." It is believed obvious

---

1. The specification discloses that a granular poly-styrene containing 1–10% of pentane as the blowing agent and 2– 3% of water may be extruded through a heated die "into open or closed molds or into the open air."

that if premature foaming is prevented by compacted granules in the cold zone in appellants' method, premature foaming inherently would be prevented using the method of Tucker applied to molding the expandable material of Stastny et al.

It seems to us, therefore, that the improvements claimed in the rejected claims are those that would flow naturally from the teachings of the prior art within the capabilities of one of ordinary skill in the art. In re Libby, 255 F.2d 412, 45 CCPA 944.

The decision of the Board of Appeals is affirmed.

Affirmed.