50 CCPA

## Application of Anthony J. URBANIC and Francis J. Maurer.

### Patent Appeal No. 6935.

United States Court of Customs and Patent Appeals.

June 28, 1963.

Rehearing Denied Sept. 27, 1963.

Theodore A. TeGrotenhuis, McCoy, Greene & TeGrotenhuis, Cleveland, Ohio (Munson H. Lane, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals affirming the examiner's rejection of claims 26 to 32, 34 to 37 and 39 to 50 [1] of appellants' application Serial No. 328,509, filed December 29, 1952, for RIGID SHOCK RESISTANT PVC.[2] No claim has been allowed.

Appellants' application describes a rigid impact resistant plastic composition of matter containing (I) a vinyl halide polymer, e. g. a vinyl chloride homopolymer or a vinyl chloride copolymer, plasticized with (II) small amounts of certain rubbery copolymers of a conjugated diolefin of less than 8 carbon atoms, e. g. butadiene, and at least one copolymerizable monolefinic compound, e. g. acrylonitrile or isopropenyl ketone, said rubbery copolymer being characterized by having a specific proportion of solubilizing nitrile (–CN) or carbonyl (–CO–) groups. Criticality is urged for the proportion of rubbery copolymer in the composition and for the proportion of nitrile or carbonyl groups in the rubbery copolymer. Appellants state in their brief that it makes no difference how the hydrocarbon backbone in the rubbery copolymer is formed, i. e. whether by polymerizing two monomers such as butadiene and acrylonitrile or by

---

1. Appellants in their brief withdrew their appeal as to claims 29, 34 and 40.

2. Appellants apparently use PVC to refer to "polyvinyl chloride compositions."

polymerizing three monomers such as butadiene, acrylonitrile and styrene; rather, they state "The invention is based on the uniqueness of the result when the ratio of carbon atoms in the hydrocarbon backbone to solubilizing nitrile or carbonyl groups is within a definite range."

Appellants' compositions may be prepared by mixing (I) and (II) in any convenient way, for example by masticating the vinyl halide polymer with the rubbery copolymer. The compositions are used for the preparation of plastic pipe, automotive parts, playing cards, license plates, traffic markers, phonograph records and the like.

The following claims are representative:

"26. A rigid impact resistanc [sic] heterogeneous polyvinyl halide base alloy composition comprising about 83 to 98 parts of rigid vinyl halide holopolymer [sic] and about 2 to 17 parts by weight of a rubbery polymer of conjugated diolefin of less than 8 carbon atoms and a copolymerizable monolefinic compound having limited compatability [sic] with said homopolymer and having compatibility-producing groups depending from the carbon atoms directly forming links in said polymer chain, said rubbery polymer containing --CN groups present in the ratio of one said --CN group for each 14 to 30 carbon atoms of the rubbery polymer, the main plasticizing constituent in said composition consisting of rubbery high polymer, the amount of other plasticizers being insufficient to destroy the rigidity of the composition.

"27. A rigid impact resistant heterogeneous polyvinyl halide composition comprising about 83 to 98 parts of a rigid polyvinyl halide and about 2 to 17 parts by weight of a rubbery high polymer of a conjugated diolefin of less than 8 carbon atoms and a copolymerizable monolefinic compound, said rubbery polymer being characterized by having a chain consisting of carbon to carbon links from which depends one --CN group for each 12.5 to 30 carbon atoms outside of said solubilizing groups of said polymer, said solubilizing groups being attached to the long molecular chain of said polymer but not being links therein, all of the carbons directly forming links in said molecular chain plus ½ of the carbon atoms in dependent aliphatic hydrocarbon side chain groups, plus ⅓ of the carbon atoms in dependent aromatic hydrocarbon groups being considered as carbons of said polymer, the main plasticizing constituent in said composition consisting of rubbery high polymer, the amount of other plasticizers being insufficient to destroy the rigidity of the composition.

"43. A rigid, shock-resistant polyvinyl composition comprising 83 to 98 parts total of at least one member of the group consisting of polyvinyl halides and copolymers of vinyl chloride with vinylidene chloride, which copolymers consist of carbon, hydrogen and chlorine, and 2 to 17 parts of plasticizer for said group member, the said plasticizer being characterized by consisting essentially of a rubbery high copolymer of a conjugated diolefin having less than 8 carbon atoms and about 12 to 27.5 mol percent of the copolymer of a copolymerizable monomeric compound having highly polar groups and selected from a member of the group selected from acrylonitrile and methyl isopropenyl ketone, the main plasticizing constituent in said composition consisting of rubbery high polymer, the amount of other plasticizers being insufficient to destroy the rigidity of the composition.

"49. A thermoplastic fusion blend consisting essentially of 100 parts of solid emulsion-prepared polyvinyl chloride resin and from 2 to 5 parts of butadiene: acrylonitrile copolymer rubber containing

from 18 to 22% of combined acrylonitrile, the said blend being characterized by an impact strength at least several times greater than the impact strength of the polyvinyl chloride resin alone, a flexural strength of at least 8000 pounds per square inch, a flexural modulus of at least $2.5 \times 10^5$ pounds per square inch, and a tensile strength of at least 4800 pounds per square inch."

Claims 35, 36, 37, 39, 41, 42, 44, 45, 46, 47 and 48 are drawn to a polymeric vinyl halide composition that is substantially within the scope of claims 26, 27 and 43, while claims 28 and 32 recite a method of forming the claimed composition which comprises masticating together the various components thereof. Claims 30 and 31 are drawn to an extruded article of the claimed composition. Claim 50 is similar to claim 49.

The references relied on are:

Patton et al. 2,580,460 Jan. 1, 1952
Humphrey et al. 2,647,101 July 28, 1953
Schaffel et al. 2,656,333 Oct. 20, 1953

The Patton et al., Humphrey et al. and Schaffel et al. patents disclose plastic compositions of matter containing a vinyl halide polymer and a rubbery copolymer.

The issues in this appeal are: (1) the adequacy of the disclosure of the instant application to support claims 49 and 50; (2) the patentability of the appealed claims over Patton et al., Humphrey et al. or Schaffel et al.; (3) the propriety of the definition of the "purported invention" in the claims.

*Issue No. 1.*

The examiner held that appellants do not have adequate basis in their application for claims 49 and 50, insofar as those claims recite (1) "fusion blend," (2) "100 parts of * * * polyvinyl chloride resin and from 2 to 5 parts of butadiene: acrylonitrile copolymer rubber containing from 18 to 22% of combined acrylonitrile," and (3) "a flexural strength of at least 8000 pounds

per square inch, a flexural modulus of at least $2.5 \times 10^5$ pounds per square inch, and a tensile strength of at least 4800 pounds per square inch" and therefore rejected those claims as being based on an insufficient disclosure. The board sustained the "Examiner's rejection of claims 49 and 50 as having no basis in the disclosure as filed." Claims 49 and 50 were presented by appellants for purposes of interference with U. S. Patent No. 2,803,621 to Schwartz et al. Claim 49 is identical with the only claim in the Schwartz et al. patent. Claim 50 is a modified form of claim 49, claim 50 omitting any reference to "a flexural strength of at least 8000 pounds per square inch, a flexural modulus of at least $2.5 \times 10^5$ pounds per square inch, and a tensile strength of at least 4800 pounds per square inch."

The invention in the Schwartz et al. patent is directed to "Thermoplastic Fusion Blend of Emulsion-Prepared Polyvinyl Chloride Resin and a Small Amount of Butadiene: Acrylonitrile Copolymer Rubber" and is based solely on the discovery that when a critical, small amount, i. e. 2 to 5 parts by weight, of a butadiene: acrylonitrile copolymer rubber containing a narrow range, i. e. 18% to 22%, of combined acrylonitrile, and 100 parts by weight of solid emulsion-prepared polyvinyl chloride resin are fusion blended, the impact strength of the polyvinyl chloride resin is increased many times over, while the flexural strength, tensile strength, and other desirable properties of the resin remain substantially unimpaired. In general, the compositions of the Schwartz et al. patent "are truly rigid, strong materials, having a flexural strength of at least 8000 p. s. i., a flexural modulus of at least $2.5 \times 10^5$ p. s. i., and a tensile strength of at least 4800 p. s. i."

We agree with the examiner that appellants' specification does not support the recitation of "100 parts of * * * polyvinyl chloride and from *2 to 5 parts*" of a rubbery copolymer.[3] We do not con-

---

3. As pointed out, claims 49 and 50 were presented by appellants for purposes of

interference with the Schwartz et al. patent. When one copies claims from a pat-

sider that the *critical, small range of from 2 to 5 parts* is disclosed in the application. It is apparent from the Schwartz et al. patent that the extraordinary characteristics of the patentees' blend are dependent on that critical, small range.

The patentees point out that increasing the copolymer rubber content to 10, 15 and 20 parts markedly reduces the impact strength values of their blend. Moreover, the patentees indicate that an increase in the copolymer rubber content to 7, 10, 15 and 20 parts quickly reduces the flexural strength, tensile strength and flexural modulus of the patentees' blend to *unacceptable* levels.

Appellants contend that they disclose 2, 3, 4 and 5 per cent of the rubbery copolymer blended in the emulsion PVC and that while Schwartz et al. use a slightly different designation calling for 2 to 5 parts of the rubbery copolymer in 100 parts of PVC, the disclosures in the Schwartz et al. patent and appellants' specification are not materially different.

Considering appellants' specification, it reads:

"The most desirable proportion of rubbery polymer in the polyvinyl halide composition is dependent to some extent on the compatibility of the two materials, but I have found no case where the amount of the rubbery polymers should exceed 20% of the weight of the mixture to obtain desirable properties in the polyvinyl halide. More than 20% of the rubbery polymer has a markedly undesirable effect on the heat distortion of the blend. Even 2 or 3% of the rubbery polymer or polymers produce a very significant improvement in the properties of the mixture and may be used when extrusion apparatus suitable for mixing the more difficultly processable materials polyvinyl chloride is available. Such a blend will process even better than

does the straight unplasticized polyvinyl chloride.

"However, processing is greatly improved when at least 4 or 5% or *preferably at least 7% of the rubbery plasticizer* is incorporated in the polyvinyl halide. The most desirable characteristic including processing, heat distortion and impact are obtained when the proportion of the rubbery plasticized polymer containing a solubilizing or compatibility producing group *is in the neighborhood of 10% by the weight of the plasticized compositon* [sic]." [Emphasis ours.]

We do not think that this disclosure supports the critical, small range of "from 2 to 5 parts" of rubbery copolymer. Appellants disclose that the most desirable characteristics of their blend are found when the rubbery copolymer is in the neighborhood of 10% of the weight of the blend. The Schwartz et al. patent, on the other hand, teaches that a blend containing 10 parts of rubbery copolymer has a markedly reduced impact value and has *unacceptable* flexural strengths, tensile strengths and flexural modulus.

With respect to the recitation "fusion blend" in claims 49 and 50, we find it unnecessary to pass on whether appellants' specification supports it because we find that other limitations of these copied claims are unsupported. Both contain the "from 2 to 5 parts" limitation above discussed and additionally claim 49 contains limitations to a blend which possesses "a flexural strength of at least 8000 pounds per square inch, a flexural modulus of at least $2.5 \times 10^5$ pounds per square inch, and a tensile strength of at least 4800 pounds per square inch."

*Issue No. 2.*

Claims 26–28, 30–32, 35–37, 39 and 41–48 stand rejected as unpatentable over Humphrey et al., or Schaffel et al.

ent for the purpose of interference there must be no doubt that an applicant must disclose each and every material limita-

tion of the copied claims. See Segall v. Sims et al., 276 F.2d 661, 47 CCPA 886.

It is the examiner's position that the Humphrey et al. patent discloses that a composition containing (1) 20 parts of a rubbery copolymer of 85 per cent butadiene and 15 per cent acrylonitrile and (2) 100 parts of a vinyl chloride polymer, and that the Schaffel et al. patent discloses a composition containing (1) 5 or 10 per cent of a plasticizing rubbery copolymer of 60 per cent butadiene and 40 per cent isopropenyl ketone and (2) 95 or 90 per cent of a polyvinyl halide. Since those compositions are included in appellants' claimed subject matter,[4] the examiner considered the appealed claims unpatentable over Humphrey et al. and Schaffel et al. The board sustained the examiner and found "the Examiner's action is without reversible error."

A careful analysis of the Humphrey et al. patent shows that the films of the patentees' invention "may contain from about *20* to about *120* parts by weight of butadiene-acrylonitrile-type copolymer, per *100* parts by weight of vinyl chloride resin." (Emphasis ours.) The patentees further disclose that the butadiene-acrylonitrile copolymer may be *any* copolymer of a butadiene-type compound, e. g. butadiene, "with from *10%* to *55%*" (Emphasis ours), based on the weight of the copolymer, of an acrylonitrile-type compound, e. g. acrylonitrile. The patented claims state that the rubbery copolymer may be one of from "*15%* to about *75%* acrylonitrile." (Emphasis ours.)

The specification of the Schaffel et al. patent reads:

"It is therefore desirable that the rubbery plasticizer comprise 40 to *60* per cent of a conjugated diolefin or diolefinic compound, and 60 to *40* per cent of the compatibility-producing component, such as methylisopropenylketone * * *.

* * * * *

"Benefits of the present invention may be obtained with as little as *5 or 10* per cent of the rubbery polymer [a copolymer of butadiene and methyl isopropenyl ketone] in a mixture having *90 to 95* per cent of the polyvinyl resin [polyvinyl chloride]." [Emphasis ours.]

We believe that such disclosures of the Humphrey et al. and Schaffel et al. patents would teach compositions encompassed by the claimed subject matter.

Appellants urge that the teachings of the rubbery copolymer shown in the Humphrey et al. patent is limited to that disclosed in the working examples of the patent, i. e. one containing 45 per cent polymerized acrylonitrile. We do not agree with that contention. We believe that to one having ordinary skill in the art the extent of the teaching would be governed by what the patent as a whole discloses.

Appellants argue that the board and the examiner failed to realize that the invention is directed to the outstanding improvement in impact resistance of a rigid, hard material without appreciably reducing its heat distortion resistance.[5]

pellants had specifically pointed to the disclosed copolymers of 60 per cent butadiene and 40 per cent methyl isopropenyl ketone to support the "12.5" in appealed claim 27. The record indicates that "12.5" carbon atoms when connected to mol per cent is equal to "27.5 mol percent." The term "27.5 mol per cent" is recited in appellants' claim 43.

---

4. That fact has not been denied by appellants. To support his position the examiner referred to polymer 1 in Table I of appellants' specification which shows that a copolymer of 85 per cent butadiene and 15 per cent acrylonitrile (vinyl cyanide) has approximately 25 carbons per solubilizing group. The examiner pointed out that a composition containing 20 parts of a rubbery copolymer and 100 parts of a vinyl chloride polymer corresponds to a composition having a 16⅔ : 83⅓ rubbery copolymer to vinyl chloride polymer ratio and that that composition is encompassed by appellants' claim 26. Similarly, the examiner stated that ap-

5. Aside from claims 49 and 50, the appealed claims specify no degree of rigidity, impact resistance or/and heat distortion resistance for the claimed compositions.

It is urged, insofar as those features are concerned, that the examiner and the board ignored the criticality of ranges as shown in appellants' specification and the affidavits on record.

In considering this argument we first must note again that compositions covered by appellants' claims are taught by the Humphrey et al. and Schaffel et al. patents. We also think it clear from the Humphrey et al. and Schaffel et al. patents that a person of ordinary skill in the art would be aware of and expect a variance in the properties of compositions in those patents as a result of the manipulation of (1) the proportions of monomers in the rubbery copolymer and (2) the ratio of the rubbery copolymer and polyvinyl halide.

The Humphrey et al. patent states:

"The properties of these films may be minutely adjusted, for particular applications, by manipulation of a number of variable factors such as the *selection and proportions* of the butadiene-type and acrylonitrile type compounds, of the selection amongst the several vinyl chloride polymers and copolymers, and the *ratio in which these materials are incorporated in the films.*" [Emphasis ours.]

The Schaffel et al. patent states:

"The amount of rubbery plasticizer in the vinyl composition may be varied greatly and determines the character of the final product. Small amounts, such as 5 parts or so, of plasticizer in the composition gives a very noticeable plasticizing effect and the rubbery nature of the

product is increased as the amount of rubbery plasticizer is increased."

Both the Humphrey et al. and Schaffel et al. patents employ their rubbery co-polymers as plasticizers. Appellants refer to the rubbery copolymer as "plasticizing high polymer or rubber."[6] It seems clear from the teaching in those patents that if one skilled in the art wants a rigid composition of polyvinyl chloride and a plasticizing rubbery copolymer of a diolefinic compound (e. g. butadiene), he would minimize the amounts of rubbery copolymer in the composition, whether the amount of diolefinic compound in the rubbery copolymer be 60 per cent as it may be in the Schaffel et al. patent or 85 per cent as it may be in the Humphrey et al. patent. The fact that those compositions would also have impact resistance would be an inherent characteristic of the compositions. It is well settled that a patent cannot properly be granted for the discovery of a result which would flow naturally from the teaching of the prior art. See In re Libby, 255 F.2d 412, 45 CCPA 944.

Furthermore, a careful analysis of appellants' application and affidavits has not convinced us as to any criticality in the specific ranges recited in appellants' claims.[7]

Claims 35, 36, 37, 39, 41, 42, 44, 45, 46, 47 and 48 differ primarily from claims 26, 27 and 43 in range recitations. We can find nothing in the record to show a criticality of such ranges over the compositions disclosed in the Humphrey et al. and Schaffel et al. patents, and consider the selection of those ranges

---

6. Appellants in the specification state "The *plasticizing* high polymer or rubber is considered to be made up of a hydrocarbon portion similar to ordinary rubber and solubilizing groups." [Emphasis ours.]

7. Claim 27, for example, specifies a rubbery polymer "being characterized by having a chain consisting of carbon to carbon links from which depends one —CN [nitrile] group for each 12.5 to 30 carbon atoms outside of said solubilizing

groups of said polymer." As to an acrylonitrile-butadiene copolymer, the record shows *comparative test data* from which we can draw our own conclusions on only one acrylonitrile-butadiene copolymer having a nitrile content outside of the claimed ranges, i. e. a butadiene-acrylonitrile copolymer containing approximately 10 atoms of carbon per nitrile group in Table II of appellants' specification. We do not think this adequate to demonstrate a criticality of the range "12.5 to 30."

to be merely an obvious matter of choice. Likewise we find nothing of patentable significance in method claims 28 and 32. Claims 30 and 31 are drawn to an extruded article and an extruded pipe respectively comprising a composition as set forth in claim 27. However, those claims do not set out any definite structural limitations. We do not consider the recitation of an extruded article or pipe to constitute a feature patentably distinguishable over the prior art.

Since we find claims 26–28, 30–32, 35–37, 39 and 41–48 unpatentable over the Schaffel et al. and Humphrey et al. patents, it is unnecessary to consider the examiner's rejection of those claims on Patton et al. or his rejection as to the propriety of the definition of the "purported invention" in those claims.

For reasons given above, the decision of the board is affirmed.

Affirmed.

50 CCPA